**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| PATRICK DANG, on behalf of himself and all others similarly situated, ) <br> ) <br> Plaintiff, ) <br> ) <br>   v. ) <br> ) <br> SAN FRANCISCO FORTY NINERS, LTD., et al., ) <br> ) <br> ) <br> Defendants. ) <br> ) <br> ) | Case No.: 5:12-CV-05481-EJD <br><br> **ORDER DENYING DEFENDANTS' MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS** <br><br> **[Re: Docket No. 51]** |

Plaintiff Patrick Dang ("Plaintiff"), an individual, has brought this putative class action against the National Football League ("NFL"), its member clubs, National Football League Properties, Inc. ("NFLP"), and Reebok International, Ltd. ("Reebok")—collectively "Defendants." Plaintiff alleges that Defendants have engaged in anticompetitive behavior and entered into agreements in violation of state and federal antitrust laws.  The allegedly unlawful conduct relates to agreements about the licensing of NFL's and NFL teams' intellectual property for use in apparel for consumer retail.

Case No.: 5:12-CV-05481-EJD
ORDER DENYING DEFENDANTS' MOTION FOR PARTIAL JUDGMENT ON THE
PLEADINGS

United States District Court
For the Northern District of California

Presently before the Court is Defendants' Motion for Partial Judgment on the Pleadings. The Court heard oral argument on August 8, 2014. For the reasons explained below, Defendants' Motion is DENIED.

## I.   BACKGROUND

The allegations contained in this section are taken largely from the Complaint, which was filed by Plaintiff on October 24, 2012. See Compl., Docket Item No. 1.

Defendant NFL is an unincorporated association founded in 1963 comprising, through their respective owners, the various football teams in the NFL. Id. ¶ 37. Defendant NFLP is a corporation established by the NFL and NFL teams for the purpose of licensing the trademarks, logos, and other branding of NFL teams and the NFL. Id. ¶ 36. Defendant Reebok is a corporation that markets sports apparel. Id. ¶ 38.

Plaintiff bases his suit on an agreement that took place in December 2000. During that time, the individual NFL teams, the NFL, and the NFLP jointly agreed to grant Reebok an exclusive license to manufacture NFL-branded apparel. Id. ¶ 63. The agreement, Plaintiff argues, marked a shift in the NFL's licensing landscape. Id. Before December 2000, he argues, NFL-related licensees had to compete against one another in order to obtain an NFLP license for the NFL or a particular NFL team. Id. ¶ 59. He also contends that the individual NFL teams competed against each other for the licensing of their own intellectual property. Id. ¶¶ 63–64. This arena of competition among both the individual NFL teams and the prospective licensees, Plaintiff argues, "ensured that the market for such apparel was subject to free market forces that served to provide the ultimate consumer of such apparel with superior product selection and competitive prices." Id. ¶ 62.

Plaintiff alleges that in November 2011, he purchased an item of apparel bearing an NFL team's logo and other intellectual property from a sports merchandise retailer. Id. ¶¶ 5, 76. Plaintiff asserts that he was an "indirect purchaser" of this apparel product bearing the NFL team's intellectual property. Id. He argues that due to the allegedly anticompetitive and unlawful

Case No.: 5:12-CV-05481-EJD
ORDER DENYING DEFENDANTS' MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS

1    agreement among the Defendants, he paid an "anticompetitive overcharge for his purchase." Id. ¶
2    5.

3           Plaintiff's Complaint brings forth four causes of action.  Count I alleges that the December
4    2000 agreement is a horizontal agreement in restraint of trade that violates California's Cartwright
5    Act, Cal. Bus. & Prof. Code §§ 16720 et seq.  Count II alleges that the agreement also constitutes a
6    vertical agreement in restraint of trade unlawful under the Cartwright Act. Count III alleges that
7    Defendants' conduct is unfair and unlawful in violation of California's Unfair Competition Law
8    ("UCL"), Cal. Bus. & Prof. Code §§ 17200 et seq.  These three Counts are brought on behalf of a
9    class of California indirect purchasers of apparel products branded with NFL team intellectual
10   property.  Count IV alleges a violation of the federal Sherman and Clayton Antitrust Acts, 15
11   U.S.C. §§ 1 et seq.  This Count is brought on behalf of a nationwide class of indirect purchasers
12   and seeks injunctive relief pursuant to 15 U.S.C. § 26.

13          The Court previously denied Defendants' motion to dismiss Plaintiff's Complaint.  See
14   Docket Item No. 38.  On March 7, 2014, Defendants moved for leave to file the instant Motion for
15   Partial Judgment on the Pleadings, which the Court granted.  The instant Motion was filed on
16   March 19, 2014.

17   **II.  LEGAL STANDARD**

18          Rule 12(c) of the Federal Rules of Civil Procedure allows a party to move for judgment on
19   the pleadings "[a]fter the pleadings are closed -- but early enough not to delay trial."  Judgment on
20   the pleadings is proper when "there is no issue of material fact in dispute, and the moving party is
21   entitled to judgment as a matter of law."  Chavez v. United States, 683 F.3d 1102, 1108 (9th Cir.
22   2012) (quoting Fleming v. Pickard, 581 F.3d 922, 925 (9th Cir. 2009)).  The standard for a Rule
23   12(c) motion is essentially the same as that for a Rule 12(b)(6) motion.  Chavez, 683 F.3d at 1108.
24   Thus, a court must presume all facts alleged in the complaint as true, and determine whether the
25   complaint shows plausible entitlement to a legal remedy.  See Bell Atl. Corp. v. Twombly, 550
26   U.S. 544, 555-57 (2007) (discussing the standard for dismissal under Rule 12(b)(6)).  A court need
27   not accept the truth of any legal conclusions cast in the form of factual allegations.  Ashcroft v.

28

Case No.: 5:12-CV-05481-EJD
ORDER DENYING DEFENDANTS' MOTION FOR PARTIAL JUDGMENT ON THE
PLEADINGS

United States District Court
For the Northern District of California

1    Iqbal, 556 U.S. 662, 678 (2009) (citation omitted) (discussing the standard for dismissal under Rule

2    12(b)(6)).

3        **III. DISCUSSION**

4        Defendants' Motion addresses the narrow issue of whether Plaintiff's Cartwright Act

5    claims (Counts I and II of the Complaint) are barred by the California Supreme Court's ruling in

6    Partee v. San Diego Chargers Football Co. that "the Cartwright Act is not applicable to the

7    interstate activities of professional football." 34 Cal. 3d 378, 380 (1983). Defendants also seek

8    judgment in their favor on Count III, the UCL claim, if they are granted judgment on Counts I and

9    II.

10       The parties' primary point of disagreement is whether the licensing activities alleged in the

11   Complaint fall within Partee's holding.

12                              **i.  Partee**

13       Partee addressed player-team-league relationships; specifically, whether the NFL's

14   operating rules violated the Cartwright Act. The plaintiff, Dennis Partee, challenged five of the

15   NFL's operating rules as they existed in 1974: the draft, option clause, Rozelle rule, tampering rule

16   and one-man rule. Id., 34 Cal. 3d at 381. The trial court found all but the option clause to violate

17   state antitrust laws. Id.

18       In reversing the trial court, the California Supreme Court compared the NFL's operating

19   rules to baseball's reserve system. In Flood v. Kuhn, 443 F.2d 264 (2d Cir. 1971) aff'd, 407 U.S.

20   258 (1972), the Second Circuit Court of Appeals considered the application of state antitrust laws

21   to baseball's reserve system. The court determined 1) that professional baseball clubs, although

22   existing as separate legal entities, are organized into leagues that each extend over several states, 2)

23   that state antitrust regulation of baseball's reserve system would impact the internal structure of the

24   leagues and would require the league to comply with the strictest state antitrust standard, and 3)

25   that the states' interest in antitrust regulation was, in the context, not "of particular urgency. Flood,

26   443 F.2d at 267-68. As such, the Second Circuit concluded that the burden to interstate commerce

27

28

Case No.: 5:12-CV-05481-EJD
ORDER DENYING DEFENDANTS' MOTION FOR PARTIAL JUDGMENT ON THE
PLEADINGS

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1    outweighed the states' interests in regulating baseball's reserve system, thereby barring state

2    regulation under the Commerce Clause.[1]  Id. at 268.

3         The California Supreme Court found that professional football was "a nationwide business

4    structured essentially the same as baseball," and that applying the Cartwright Act to the challenged

5    NFL operating rules would have much the same effect as applying state antitrust laws to baseball's

6    reserve system.  See Partee, 34 Cal. 3d at 384.

7         The parties disagree as to the scope of Partee.  Defendants contend that Partee itself

8    requires dismissal of Plaintiff's Cartwright Act claims as a matter of law.  However, it is clear that

9    the licensing activities that are alleged in the Complaint are qualitatively different from the labor

10   contracts discussed in Partee, and the Court agrees with Plaintiff that Partee should not be read to

11   exempt, without limit, any interstate economic activity carried out by the owners of professional

12   football teams.  Rather, the Partee court focused on the necessity of the NFL's operating rules

13   regarding player-team-league relationships to the NFL's nationwide league structure, relying on

14   Flood to conclude that allowing California to regulate such an activity would impose a burden on

15   interstate commerce that outweighed California's interest in applying its antitrust laws to that

16   relationship.

17        Thus, while Partee holds that the Cartwright Act cannot be applied to the "interstate

18   activities of professional football," the "interstate activities of professional football" are those

19   activities which, if regulated by the state law, would result in a burden on professional football that

20   would outweigh the state's interest in regulating such activities.  To put it more generically, Partee

21   is simply a straightforward application of Commerce Clause jurisprudence to a specific instance of

22   state regulation of a nationwide enterprise.

23

24

25

26   [1] Where the nature of an enterprise is such that differing state regulation, although not conflicting, requires the
     enterprise to comply with the strictest standard of several states in order to continue an interstate business extending

27   over many states, the extra-territorial effect which the application of a particular state law would exact constitutes,
     absent a strong state interest, an impermissible burden on interstate commerce.  Southern Pacific Co. v. Arizona, 325

28   U.S. 761, 774-775 (1945).

5

### ii.  Post-Partee cases

The Court's reading of Partee comports with the post-Partee cases.  Defendants cite to three cases in which Partee's holding was applied: Hebert v. Los Angeles Raiders, Ltd., 23 Cal. App. 4th 414, 423 (1991); City of San Jose v. Office of Comm'r of Baseball, 2013 WL 5609346 (N.D. Cal. Oct. 11, 2013); and City of Oakland v. Oakland Raiders, 174 Cal. App. 3d 414 (1985).  These cases merit further discussion.

### 1.  Hebert

In Hebert, a professional football player brought an action against a professional football team and a professional football league, alleging that an agreement among the league teams restraining competition among the teams for players' services prevented plaintiff from engaging in his lawful profession, trade, or business in violation of provisions of California's constitution and statutory law (Cal. Const., art. I, § 1, and Bus. & Prof. Code § 16600).

The Hebert court found that Partee controlled the result.  The plaintiff argued that Partee was inapplicable because Partee concerned antitrust laws rather than his right to engage in his chosen profession.  Id., 23 Cal. App. 4th at 423.  The court disagreed, holding that his "additional reliance on a provision of the California Constitution cannot disguise the fact that the alleged deprivation of his right to work as a professional football player is included in the rights alleged in Partee to constitute a violation of the Cartwright Act, which Partee held may not be enforced because of its impermissible burden on interstate commerce."  Id. at 424.

The plaintiff also disputed the dismissal of his complaint by demurrer, arguing that a Commerce Clause challenge "requires a balancing test on the basis of a fully developed factual record and cannot be determined on a demurrer, the function of which is to test the sufficiency of a complaint as a matter of law."  Id.  The court, however, found that further factual development was precluded by Partee because Partee had, in effect, already made such factual findings.  Id. at 425.

Hebert's holding does not help Defendants because it is essentially the same case as Partee: a professional football player's challenge, on state law grounds, to the NFL's rules regarding player-team-league relationships.  What is important about Hebert, however, is that it

1  acknowledges the necessity of deciding Commerce Clause cases on a complete factual record, even

2  if further factual development in <u>Hebert</u> itself was rendered unnecessary by <u>Partee</u>.

### 2.  <u>City of San Jose</u>

4      <u>City of San Jose</u> addresses, <u>inter alia</u>, the application of the Cartwright Act to Major League

5  Baseball's ("MLB") failure to approve the Oakland Athletics Baseball Club's proposed relocation

6  from Oakland to San Jose. <u>Id.</u>, 2013 WL 5609346, at *2.  The court held that, under <u>Partee</u>, the

7  Cartwright Act could not be applied to the MLB's interference with the relocation.  Defendants

8  seem to regard <u>City of San Jose</u> as standing for the proposition that <u>Partee</u> has a broad holding and

9  can be applied to activities other than player-team-league relationships.

10      <u>Partee</u>, however, is given only a brief discussion in the case.  The court used <u>Partee</u> to

11  confirm that the Cartwright Act cannot be applied to the interstate activities of professional sports.

12  However, the court's finding that team relocation is an essential part of "the business of baseball"

13  (analogous to "the interstate activities of professional football") was supported not by <u>Partee</u> itself,

14  but by a body of case and statutory law.  <u>Id.</u> at *10-11.

### 3.  <u>City of Oakland</u>

16      <u>City of Oakland</u> concerns a plaintiff's attempt to acquire by eminent domain the property of

17  the Oakland Raiders, a NFL franchise.  The California Court of Appeal held "that the burden that

18  would be imposed on interstate commerce outweighs the local interest in exercising statutory

19  eminent domain authority over the Raiders franchise.  174 Cal. App. 3d at 422.  Importantly,

20  however, the Court of Appeal based its holding on factual findings made by the trial court.  The

21  trial court had made specific findings pertaining to the effects of the plaintiff's eminent domain

22  action on the entire NFL, concluding that "a single precedent of eminent domain acquisition would

23  pervade the entire League, and even the threat of its exercise elsewhere would seriously disrupt the

24  balance of economic bargaining on stadium leases throughout the nation." <u>Id.</u> at 420.  Based on

25  this, the Court of Appeal found that the plaintiff's action would "more than indirectly or

26  incidentally regulate interstate commerce . . . [t]his is the precise brand of parochial meddling with

27  the national economy that the commerce clause was designed to prohibit." <u>Id.</u> at 421.

28

7

Case No.: 5:12-CV-05481-EJD
ORDER DENYING DEFENDANTS' MOTION FOR PARTIAL JUDGMENT ON THE
PLEADINGS

**United States District Court**
For the Northern District of California

**iii.  Further factual development is necessary**

Reading these cases together, it is clear that further factual development is necessary for the Court to rule on this issue.  "Commerce Clause adjudication must depend in large part 'upon the thoroughness with which the lawyers perform their task in the conduct of constitutional litigation. Here, as in many other fields, constitutionality is conditioned upon the facts, and to the lawyers the courts are entitled to look for garnering and presenting the facts.'"  Raymond Motor Transp., Inc. v. Rice, 434 U.S. 429, 448 (1978) (citing Dowling, Interstate Commerce and State Power, 27 Va. L. Rev. 1, 27-28 (1940)).

At most, Defendants have identified that the Commerce Clause may bar Plaintiff's Cartwright Act claims after discovery or trial.  None of the cases cited by Defendants clearly hold that state regulation of the exclusive licensing scheme alleged by Plaintiff is absolutely barred by Partee or the Commerce Clause.  Nor is the record developed fully enough for the Court to make such a determination.  This is not a case like Hebert where the challenged activities were the same as the challenged activities in Partee.  Nor is this a case like City of San Jose where the case and statutory law precluded the court from having to make its own factual findings.  This case is more similar to City of Oakland, where the court's determination as to whether application of state law to the interstate business violated the Commerce Clause was a question of first impression and was made on a more fully developed record.

**IV. CONCLUSION**

For the foregoing reasons, Defendants' Motion is DENIED.  Defendants are not precluded from again raising these issues at a later date, such as in a motion for summary judgment.

**IT IS SO ORDERED**

Dated: August 29, 2014

EDWARD J. DAVILA
United States District Judge

Case No.: 5:12-CV-05481-EJD
ORDER DENYING DEFENDANTS' MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS