Roy A. Katriel (265463)
**THE KATRIEL LAW FIRM**
4225 Executive Square, Suite 600
La Jolla, CA 92037
Tel:    (858) 242-5642
Fax:    (858) 430-3719
E-mail: rak@katriellaw.com

Ralph B. Kalfayan (133464)
**KRAUSE, KALFAYAN BENINK & SLAVENS, LLP**
550 West C Street, Suite 530
San Diego, CA 92101
Telephone: (619) 232-0331
Facsimile: (619) 232-4019
E-mail:rkalfayan@kkbs-law.com

*Counsel for Plaintiffs and the Putative Class*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| MICHAEL VILLA, On Behalf Of Himself And All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>SAN FRANCISCO FORTY NINERS, LTD., et. al.<br><br>Defendants. | Case No.  12-cv-5481-EJD<br><br>**CLASS ACTION**<br><br>**PLAINTIFF'S NOTICE OF MOTION, MOTION, AND MEMORANDUM IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>**Judge: Hon. Edward J. Davila**<br>**Courtroom: 4, 5th Floor**<br>**Hearing Date:  April 21, 2016**<br>**Hearing Time: 10:00 am** |

# <u>TABLE OF CONTENTS</u>

NOTICE OF MOTION AND MOTION................................................................1

MEMORANDUM IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR
 PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT.........................…...................1

I.       INTRODUCTION AND SUMMARY OF MOTION...............................................1

II.      PRELIMINARY APPROVAL SHOULD BE GRANTED.........................…...................7

         A.       The Settlement Class Should Be Conditionally Certified.......................…...................7

                  1.    The Settlement Class Satisfies The Numerosity Requirement...........................9

                  2.    The Settlement Class Satisfies The Commonality Requirement…….....................10

                  3.    The Settlement Class Satisfies The Typicality Requirement...........................10

                  4.    The Settlement Class Satisfies The Adequacy Requirement...........................11

                  5.    The Settlement Class Satisfies The Necessary Criteria Of Rule 23(b)…….....….....12

         B.       The Notice Plan Should Be Approved....................................................…...................14

         C.       The Substantive Terms of The Settlement Are Fair, And Should Be
                  Granted Preliminary Approval.............................................................…...................15

         D.       The Settlement Was a Product of Adversarial Arms'-Length Negotiation.................18

CONCLUSION....................................................................................…...................19

1

# TABLE OF AUTHORITIES

2

**Cases:**

3
*Alberton v. Commonwealth Land Title Ins. Co.,*
2008 WL 1849774 (E.D. Pa. Apr. 25, 2008)…………………………………………………..14-15

4

5
*Amchem Prods. v. Windsor,*
521 U.S. 591 (1997)…………………………………………………………………………..9

6

7
*American Needle Inc. v. National Football League,*
560 U.S. 183 (2010)…………………………………………………………………………..18

8

9
*Baghdasarian v. Amazon.com, Inc.,*
2009 WL 2263581 (C.D. Cal., Jul. 7, 2009)…………………………………………………13

10
*Behrens v. Wometco Enterprises, Inc.,*
118 F.R.D. 534, *aff'd* 899 F.2d 21 (11th Cir. 1989)…………………………………………..7

11

12
*Bellinghausen v. Tractor Supply Co.,*
306 F.R.D. 245 (N.D. Cal. 2015)……………………………………………………………4

13

14
*Browning v. Yahoo! Inc.,*
2007 WL 4105971 (N.D. Cal. Nov. 16, 2007)………………………………………………9

15
*Burden v. SelectQuote Insurance Srvcs.,*
2013 WL 3988771 (N.D. Cal. Aug. 2, 2013)………………………………………………..4

16

17
*Cagan v. Anchor Sav. Bank FSB,*
1990 WL 73423 (E.D.N.Y. May 22, 1990)…………………………………………………7

18

19
*Castro v. Zenith Acquisition Corp.,*
2007 WL 81905 (N.D. Cal.  Jan. 9, 2007)…………………………………………………..15

20

21
*Class Plaintiffs v. Seattle,*
955 F.2d 1268 (9th Cir. 1992)………………………………………………………………16

22
*Dang. v. San Francisco Forty Niners, Ltd.,*
2014 WL 4275627 (N.D. Cal. Aug. 29, 2014)………………………………………………18

23

24
*Erie Forge and Steel, Inc. v. Cyprus Minerals Co.,*
1994 WL 485803 (W.D. Pa. Dec. 23, 1996)………………………………………………..6

25

26
*Evans v. Linden Research,*
2013 WL 5781284 (N.D. Cal. Oct. 25, 2013)………………………………………………15

27

28
*Fraley ex rel. Duval v. Facebook, Inc.,*
2012 WL 6013427 (N.D. Cal. Dec. 3, 2012)………………………………………………8

*Friedman v. 24 Hour Fitness USA Inc.*,
2009 WL 2410889 (C.D. Cal. Aug. 6, 2009)…………………………………………..……..12

*Galluci v. Gonzales*,
603 Fed. Appx. 533, 535 (9th Cir. 2015)………………………………………………………17

*Gattreaux v. Pierce*,
690 F.2d 616 (7th Cir. 1982)……………………………………………………………………16

*Gribble v. Cool Transports, Inc.*,
2008 WL 5281665 (C.D. Cal. Dec. 15, 2008)……………………………………………………8

*Grunewald v. Kasperbauer*,
235 F.R.D. 599 (E.D. Pa. 2006)………………………………………………………………15

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ……………………………………………..…………10, 11

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3rd Cir. 2001)……………………………………………………………………17

*In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litig.*,
1993 WL 39306, (C.D. Cal. Jan. 12, 1993)………………………………………………..…….8

*In re Domestic Air Transp. Antitrust Litig.*,
148 F.R.D. 297 (N.D. Ga. 1993)…………………………………………………………………6

*In re Four Seasons Sec. Litig.*,
58 F.R.D. 19 (W.D. Okla. 1972)…………………………………………………………………7

*In re Google Referrer Header Privacy Litig.*,
87 F. Supp.3d 1122 (N.D. Cal. 2015)…………………………………………..……………17

*In re Heartland Payment Systems, Inc. Customer Data Sec. Breach Litig.*,
851 F. Supp.2d 1040 (S.D. Tex. 2012)…………………………………………………………14

*In re Mego Financial Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir. 2000)……………………………………………………………………6

*In re NVIDIA Corp. Derivative Litig.*,
2009 U.S. Dist. LEXIS 24973 (N.D. Cal. Mar. 18, 2009)………………...………………16

*In re Pharmaceutical Industry Average Wholesale Price Litig.*,
588 F.3d 24 (1st Cir. 2009)………………………………………………………………3-4

*In re Publication Paper Antitrust Litig.*,
2009 WL 2351724 (D. Conn. Jul. 30, 2009)………………………………………………..……4

*In re Rubber Chemicals Antitrust Litig.*,
232 F.R.D. 346 (N.D. Cal. 2005)……………………………………………..………9

*Jaffe v. Morgan Stanley & Co., Inc.*,
2008 WL 346417 (N.D. Cal. Feb. 7, 2008)………………………………....……..2

*Lazy Oil Co. v. Wotco Co.*,
95 F. Supp.2d 290 (W.D. Pa. 1997)………………………………………………6

*Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*,
244 F.3d 1152 (9th Cir. 2001)…………………………………………..……12

*Lowdermilk v. United States Bank National Assoc.*,
479 F.3d 994 (9th Cir. 2007)…………………………………………...……10

*Masters v. Wilhelmina Model Agency, Inc.*,
473 F.3d 423 (2nd Cir. 2007)……………………………………………4

*McPhail v. First Command Financial Planning, Inc.*,
2009 WL 839841 (S.D. Cal. Mar. 30, 2009)……………………………...……6, 17

*Mullane v. Central Hanover Trust*,
339 U.S. 306 (1950)………………………………………………………14

*Nen Thio v. Genji, LLC*,
14 F. Supp. 3d 1324 (N.D. Cal. 2014)……………………………………………8

*Nichols v. SmithKline Beecham Corp.*,
2005 WL 950616 (E.D. Pa. Apr. 22, 2005)……………………………………17

*Officers for Justice v. Civil Service Comm'n*,
688 F.2d 615 (9th Cir. 1982)……………………………………..……..15-16

*Parra v. Bashas, Inc.*,
536 F.3d 975 (9th Cir. 2008)…………………………………...……10

*Rosario v. Livaditis*,
963 F.2d 1013 (7th Cir. 1992)……………………………………11

*Shames v. Hertz Corp.*,
2012 WL 5392159 (S.D. Cal. Nov. 5, 2012)……………………………………6

*Simpson v. Fireman's Fund Ins. Co.*,
231 F.R.D. 391 (N.D. Cal. 2005)………………………………………..11

*Tadepalli v. Uber Techs., Inc.*,
2015 WL 9196054 (N.D. Cal. 2015)………………………………………17

*Tchoboian v. Parking Concepts, Inc.*,
2009 WL 2169883 (C.D. Cal. Jul. 16, 2009)………………………………………………...………13

*Torrisi v. Tucson Elec. Power*,
8 F.3d 1370 (9th Cir. 1993)………………………………………………………………………..15

*Van Bronkhorst v. Safeco Corp.*,
529 F.2d 943 (9th Cir. 1976)……………………………………………………………………….15

*Weeks v. Kellogg Co.*,
2011 U.S. Dist. LEXIS 155472 (C.D. Cal. Nov. 23, 2011)……………………………………….17

*Willner v. Manpower Inc.*,
2015 WL 54349 (N.D. Cal. 2015)………………………………………………………………….8

*Zinser v. Accufix Research Int., Inc.*
253 F.3d 1180 *amended* 273 F.3d 1266 (9th Cir. 2001)………………………...………………12

**Statutes and Rules:**

Fed. R. Civ. P. 23……………………………………………………………………………..passim

1   **NOTICE OF MOTION AND MOTION**

2          To Defendants, their counsel of record, and any other interested parties:

3   PLEASE TAKE NOTICE THAT on April 21, 2016, at 10:00 a.m., at Courtroom 4 of the United States

4   District Court for the Northern District of California, San Jose Division, in San Jose, California, or at

5   such other time or place as this Court may Order, pursuant to Federal Rule of Civil Procedure 23(e),

6   Plaintiff Michael Villa ("Plaintiff" or "Villa"), by and through his undersigned counsel, will and does

7   hereby move this Court in unopposed fashion for an Order granting Preliminary Approval to the

8   classwide Proposed Settlement reached in this matter.  A copy of the Settlement Agreement is attached

9   as Exhibit 1 to the Declaration of Roy A. Katriel being filed herewith.  A copy of the proposed Order

10  being sought to be entered by this Court is attached as Exhibit C to the Settlement Agreement.

11         This unopposed motion is based on the accompanying Memorandum in Support, Declaration of

12  Roy A. Katriel, including the Settlement Agreement which is attached thereto (including all of its

13  exhibits), the Declaration of Jeffery D. Dahl, the Declaration of John Grudnowski,[1] any argument of

14  counsel, and such additional material as this Court may consider.

15  **MEMORANDUM IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR**

16  **PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

17  **I.      INTRODUCTION AND SUMMARY OF MOTION**

18         Plaintiff Villa and his counsel are pleased to report that, following an in-person mediation

19  session before the Honorable A. Howard Matz (Ret.) in October 2014, followed by extensive follow-up

20  telephonic discussions on numerous occasions over the months since the mediation, the parties to the

21  above-entitled action have reached a proposed classwide settlement to resolve the claims asserted in the

22  operative First Amended Class Action Complaint ("FAC") filed in this action.  A copy of the parties'

23  Settlement Agreement is attached as Exhibit 1 to the Declaration of Roy A. Katriel in Support of

24  Plaintiffs' Unopposed Motion for Preliminary Approval Of Class Action Settlement ("Katriel Decl.").

25         Plaintiff now files this unopposed motion for preliminary approval, so that: notice of the

27  _____

28  [1] The Declaration of John Grudnowski is attached as Exhibit 2 to the Declaration of Jeffrey H. Dahl.

1

proposed settlement can be disseminated to the absent class members; the absent class members can be given an opportunity to avail themselves of the settlement, opt-out of the Settlement Class, or file any objections to the proposed settlement; and, this action and all other proceedings involving the subject-matter encompassed by this class action and Settlement Agreement be stayed pending the Court's determination as to whether to grant Final Approval to the proposed settlement. *See* Fed. R. Civ. P. 23(e)(1) (directing that any notice of class action settlement may only be disseminated with prior court approval); *see also Jaffe v. Morgan Stanley & Co., Inc.*, 2008 WL 346417, at *11 (N.D. Cal. Feb. 7, 2008) (once court grants preliminary approval it is  proper to stay and enjoin members of settlement class from litigating before this or other courts matters covered by proposed settlement).

This unopposed motion for preliminary approval also seeks to set a date for the Final Approval and Fairness Hearing on the proposed settlement. *See* Settlement Agreement, at ¶11.2 (setting timeline for filing of Final Approval motion and hearing).   At the Final Approval Hearing, the Court will have the opportunity to, *inter alia*, determine whether to grant final approval to the class action settlement, as well as to evaluate any objections to the settlement that may have been filed. *See* Fed. R. Civ. P. 23(e)(2) (directing that class action settlement that purports to bind absent class members may only be entered after hearing held by the court).

The unopposed motion for preliminary approval should be granted.  The settlement reached is unquestionably fair.  It provides class members—persons who during the Class Period made purchases in California of jerseys, caps, or shoes bearing the intellectual property (i.e., logos or emblems) of any NFL team— meaningful monetary relief to reimburse them for the alleged overcharges they were subjected to as a result of the antitrust violations pled in the FAC. *See* Settlement Agreement, at ¶ 2.2 (defining Settlement Class); ¶ 3.1 (providing amount of total Settlement Fund consideration); ¶¶ 4.1. – 4.1.6 (detailing how settlement fund is to be allocated among eligible Settlement Class Members).  The Settlement Agreement calls for the NFL Defendants and Reebok International Ltd. to create a $ 4,750,000 settlement fund to be used to, *inter alia*, pay the eligible claims of this settlement class, as well as to front the cost of drafting and disseminating the notice of this proposed class action settlement, and to reimburse Class Counsel for their incurred expenses and attorneys' fees as awarded by the Court. *Id*. at ¶ 3.1; ¶¶ 4.1 – 4.1.6.

2

The Settlement Agreement defines and agrees to the certification of a Settlement Class defined as persons who, during the Class Period, made purchases in California of caps, jerseys, or shoes bearing NFL- branded intellectual property (i.e., the NFL's or an NFL team's logo or trademark).  *See* Settlement Agreement, at ¶¶ 2.2-2.3 (defining Settlement Class and its exclusions).   The monetary relief offered by the settlement to this California Settlement Class is meaningful and undeniably reasonable. The reimbursement amount per class member will depend on, *inter alia*, whether the Class member purchased an NFL-branded jersey or shoes (generally more expensive items) or an NFL -branded cap (the generally less expensive apparel item).   Reimbursement amount per claimant also depends on whether the class member presents a valid proof of purchase or instead resorts to filing a claim by submitting a valid Declaration attesting to the qualifying purchases made.

Under the Settlement Agreement, the entire settlement consideration is non-reversionary, meaning that, regardless of the claims rate, no amount will revert back to Defendants. *Id.*, at ¶ 5.1  All settlement consideration will be used to benefit the Settlement Class through direct payments, payment of class notice costs and reimbursement of settlement administration expenses, reimbursement of attorneys' fees and costs as approved by the Court and, only if necessary to account for any consideration still remaining in the settlement fund, disbursement of any residual amounts left over to a Court-approved *cy pres* recipient.

But before such a contingent *cy pres* distribution is even contemplated, the Settlement Agreement ensures that if any balance remains in the Class Payment Fund once all claims have been submitted and initially processed, the fund balance remaining shall be used to provide additional compensation to members of the Settlement Class, potentially up to three times the initial award or, in some cases, potentially up to full reimbursement of the purchase price of the apparel item.  *Id.*, at ¶5.1 That is, the Settlement Agreement provides Class Members with the prospect of obtaining a trebled recovery if the Class Payment Fund is not fully exhausted after all eligible claims have been submitted, and no *cy pres* distribution could ever be made under the Settlement Agreement until and unless all valid claimants had obtained a trebled recovery (or full reimbursement of purchase price) under the settlement.  This is the precise practice that federal courts across the country have held mark antitrust class action settlements with an indicia of inherent fairness.  *See, e.g., In re Pharmaceutical Industry*

3

*Average Wholesale Price Litig.*, 588 F.3d 24, 35 (1st Cir. 2009) (district court's approval of *cy pres* distribution affirmed where court required that any undistributed funds first be used to treble settlement payments made to class members before any remaining funds were subject to *cy pres* disbursement: "The court ultimately insisted that the settlement pay class members treble damages before any money is distributed through *cy pres*."); *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423 (2nd Cir. 2007) (remanding for district court to consider on final approval of class action settlement whether undistributed funds should be used to treble class members claims first before being disbursed to *cy pres* recipient); *In re Publication Paper Antitrust Litig.*, 2009 WL 2351724, at *2 (D. Conn. Jul. 30, 2009) (not approving *cy pres* distribution of undistributed settlement funds until all class members' claims had been trebled).

Of course, there is no *a priori* guarantee that the claimants will obtain a trebled recovery because the availability of that remedy will depend on the number of eligible claims filed relative to the settlement fund.   If a  larger number of eligible claims are filed, the settlement fund may be fully disbursed prior to trebling.  But, under that hypothetical circumstance, the large claims rate would itself be an indicator of the class members' endorsement of the settlement and its fairness.  *See Burden v. SelectQuote Insurance Srvcs.*, 2013 WL 3988771, at *4 (N.D. Cal. Aug. 2, 2013) (fact that "an extremely high percentage of class members submitted claim forms" is a factor that "strongly favors approval"); *see also Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 252 (N.D. Cal. 2015) (granting final approval to class settlement that provided for pro rata distribution of settlement fund based on claims filed).

To guard against the prospect of fraud or an unjustified windfall, the Settlement Agreement provides for limits on individual maximum recoveries per eligible transaction.  *See* Settlement Agreement, at ¶ 4.1.6 (addressing maximum settlement recovery per claimant prior to any trebling). These maximum limits are not only reasonable, but could exceed the actual damages that a prevailing plaintiff could have obtained after a full trial.  For example, for a class member who, like named plaintiff Villa or former named plaintiff Patrick Dang, present a proof of purchase as part of their claim, the Settlement Agreement sets a maximum recovery per purchase of a jersey, cap, or shoes pre-trebling of up to one-third of the actual full purchase price of the item, *See* Settlement Agreement, at ¶ 4.1.6.

4

This amount is consistent with the overcharge  percentage calculated by plaintiff's expert. *See* Dkt. No. 127 (Expert Reply Rpt. of Dr. Russell Mangum III in Supp. Of Plaintiff's Mtn. For Class Cert.).  If funds remain after the specified maximums are paid to all claimants, the recoveries would be increased proportionally, up to an amount (the full purchase price) that would treble the original maximum. Settlement Agreement, at ¶ 5.1  For those class members who do not present a proof of purchase, the Settlement Agreement sets a maximum per transaction pre-trebling recovery of $15.00 per eligible purchase of NFL-team branded jersey or shoes or $5.00 per eligible purchase of NFL-team branded cap. *Id.*, at ¶ 4.1.6.  And, these amounts to individuals who lack a proof of purchase also are eligible to be trebled if the settlement fund has not been fully disbursed.  *Id.*, at ¶ 5.1.

The Settlement Agreement provides a straightforward and eminently fair means for class members to file claims.  It recognizes that, while some persons (like named Plaintiff Villa and former named plaintiff Patrick Dang) may be able to produce receipts or proofs of purchase for their qualifying NFL apparel purchases, other class members may not be able to do so.  The Settlement Agreement, therefore, sets up a twofold mechanism of submitting claims.  Class members, like Villa, who have receipts for their purchases may submit those in support of their filed claims and thereby be eligible for a higher reimbursement amount from the Settlement Fund.  *Id.*, at ¶¶ 4.1.3(i) – 4.1.3(ii).  Class members who are unable to produce a supporting receipt or other proof of purchase for their NFL apparel purchase, however, may still file claims for up to two items of qualifying NFL apparel allegedly purchased in California during the Class Period and obtain reimbursement from the settlement's Class Payment Fund by executing a Declaration under penalty of perjury that details their respective purchases and its specifics.  (To guard against fraud, the Settlement Claims Administrator will have the ability to audit and to seek to verify the validity of any claim).  *Id.*, at ¶¶ 4.1.3(iii) – 4.1.3(iv).

The foregoing dollar amounts are unquestionably fair.  They are consistent with the results of the preliminary regression analysis undertaken by Plaintiff's expert economist, Dr. Russell Mangum III. *See* Dkt. No. 127, Mangum Reply Rpt..   They also strike a balance between the class members' alleged damages, uncertainty of prevailing and the risk of continued litigation, and any delay associated with continued adversarial litigation of this action through trial and any appeal.

In addition to the foregoing substantive relief, the Settlement Agreement requires Defendants to

5

pay a portion of the settlement consideration up front to advance the costs of disseminating notice of the proposed settlement to the absent class members. *See* Settlement Agreement, at ¶ 3.1.  The Settlement Agreement also provides for the settlement consideration paid by Defendants to be used to reimburse the expenses incurred in settlement claims administration, as approved by the Court.  *Id.*, at ¶¶ 12.2-12.4. Under the Settlement Agreement, Class Counsel is also entitled to seek an award of fees and costs which, if approved by the Court, would be reimbursed from the settlement consideration.  *Id.* at ¶ 3.1; ¶ 12.2; *see* United States District Court for the Northern District of California Procedural Guidance for Class Action Settlements, Preliminary Approval, Section 2.  By any objective standard, the settlement warrants preliminary approval.  Similar classwide settlements have been granted final approval by this and other California federal courts and affirmed by the Ninth Circuit, even where they provided a lesser proportional recovery than that provided here. *See In re Mego Financial Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (affirming final approval of class action settlement and finding that "the Settlement amount of almost $2 million was roughly one-sixth of the potential recovery, which, given the difficulties in proving the case, is fair and adequate."); *Shames v. Hertz Corp.*, 2012 WL 5392159, at * 6 (S.D. Cal. Nov. 5, 2012) (in antitrust action granting final approval to class settlement and noting that "district courts have found that settlements for substantially less than the plaintiffs' claimed damages may be fair and reasonable, especially when taking into account the uncertainties involved with litigation."); *McPhail v. First Command Financial Planning, Inc.*, 2009 WL 839841, at *5 (S.D.  Cal. Mar. 30, 2009) (granting final approval to class settlement and finding settlement to be fair and reasonable where "the recovery is only approximately 7% of the estimated damages."); *see also Lazy Oil Co. v. Wotco Co.,* 95 F.Supp.2d 290, 339 (W.D. Pa. 1997) (court approved settlement amounting to 5.35 percent of damages for the entire class period and 25.5 percent of the of the damages falling within the limitations period)  (court approved settlement of 28 percent of estimated damages for four years); *In re Domestic Air Transp. Antitrust Litig.,* 148 F.R.D. 297, 325 (N.D.Ga.1993) (approving a settlement in the appropriate amount of 12.7 to 15.3 percent of the estimated $2 billion minimum possible treble recovery); *Erie Forge and Steel, Inc. v. Cyprus Minerals Co.,* 1994 WL 485803 (W.D.Pa. Dec.23, 1996) (approving settlement of $3.6 million where plaintiffs' expert estimated damages of $44.4 million); *Fox v. Integra Financial Corp.,* Civil Action No. 90-1504 (W.D.Pa. July 9, 1996) (approving

6

a settlement of $6.5 million where plaintiffs' best estimate of provable damages was $33 million); *In re Four Seasons Sec. Litig.,* 58 F.R.D. 19, 36-37 (W.D.Okla.1972) ($8 million settlement approved although claims exceeded $100 million); *Cagan v. Anchor Sav. Bank FSB,* 1990 WL 73423 at *12-13 (E.D.N.Y. May 22, 1990) (approving $2.3 million settlement over objections that "best possible recovery would be approximately $121 million"); *Behrens v. Wometco Enterprises, Inc.,* 118 F.R.D. 534, 542 (S.D. Fla. 1988) ("The mere fact that the proposed settlement of $0.20 a share is a small fraction of the desired recovery of $3.50 a share is not indicative of an inadequate compromise."), *aff'd* 899 F.2d 21 (11th Cir.1990).

The notice of the proposed settlement also fully complies with Rule 23 and due process, as it fully advises class members of their rights under the settlement, and is to be disseminated in print and through online publication in a manner calculated to robustly and repeatedly reach the members of the Settlement Class.. *See* Dahl Decl., at ¶ 16 (Notice Plan anticipated to reach at least 80% of members of Settlement Class with a frequency of 2.0); Grudnowski Decl., ¶ 7 (same); Settlement Agreement, at ¶¶ 7.1 – 7.2 (setting forth Notice Plan criteria).

Certification of a Settlement Class for settlement purposes only is also worthy of preliminary approval.  Here, the Settlement Class definition closely tracks the putative class definition alleged in the FAC.  *Compare* Settlement Agreement, at ¶ 1.23 (Settlement Class definition) *with* FAC, at ¶ 35 (putative class defined in complaint).   The main difference is that the Settlement Class is limited to those categories of NFL-team branded apparel that were subject to an exclusive agreement with Defendant Reebok.   (The release to be provided pursuant to this settlement will, naturally, cover only the members of the Settlement Class.) Other items of apparel that were included in the class definition initially pled in the FAC were not subject to this same exclusivity term.  As detailed below, moreover, Plaintiff and the FAC meet the criteria of Rule 23 for class certification.

II.   **PRELIMINARY APPROVAL SHOULD BE GRANTED.**

A.   **The Settlement Class Should Be Conditionally Certified.**

This is a class action, and as such, the proposed Settlement Agreement calls for certification of a Settlement Class for settlement purposes only.  *See* Settlement Agreement, at ¶ 2.2 (defining Settlement

Class).[2]  The use of such settlement classes is common and proper in the resolution of class action

litigation.  *See, e.g., Gribble v. Cool Transports, Inc.*, 2008 WL 5281665, at * 3 (C.D. Cal. Dec. 15,

2008) (approving settlement class as part of final approval of class action settlement); *In re Connecticut*

*General Life Ins. Co.*, 1997 WL 910387, at *1 ¶ 2 (C.D. Cal. Feb. 13, 1997) (certifying "for purposes of

settlement, the Settlement Class defined in Section II and Exhibit E of the Settlement Agreement"); *In re*

*Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litig.*, 1993 WL 39306, at *2 ¶2

(C.D. Cal. Jan. 12, 1993) (granting preliminary approval and certifying "for purposes of this settlement

only, Temporary Settlement Classes as defined in the Settlement Agreement.").

> Here, subject to certain exclusions, the Settlement Class is defined as:

> [A]ll Persons nationwide who made an Eligible Purchase except for the Excluded Persons ("*Settlement Class*").  As used in this Agreement, the term "*Eligible Purchase*" means a purchase made in California at retail for personal use and not for resale or for other commercial gain, during the Class Period, of a licensed jersey, hat, or pair of shoes bearing the Intellectual Property of the NFL, NFLP and/or an NFL Club or Clubs.  A purchase shall be deemed "made in California" if (a) the purchaser was resident in the State of California at the time of purchase; (b) the purchaser was physically present in the State of California at the time of purchase; or (c) the item was purchased online for delivery to an address in the State of California.

Settlement Agreement, at ¶ 2.2.

> The term "Excluded Persons" used within the Settlement Class definition is defined within the

Settlement Agreement to mean:

> The following Persons (each, an "*Excluded Person*") shall be excluded from the Settlement Class and shall not be Class Members: (a) the Settlement Administrator; (b) the Mediator; (c) any parent, subsidiary, or affiliate of any of the Defendants and their respective officers, directors, agents, or employees as of the date of filing of the Action; (d) any judge presiding over the Action and his or her immediate family members; and

---

[2] Defendants have agreed not to oppose certification of this Settlement Class.  However, as is usual in cases of this kind, defendants have reserved all of their objections to the certification of a class in this (or any other) case for any other purpose, and the parties have agreed that nothing in the Settlement Agreement shall be construed as having any bearing on class certification issues as they might arise in any context other than this settlement.  *See* Settlement Agreement ¶¶ 2.1, 15.4.6.  Courts routinely accept such conditional, settlement-only class certifications.  *See, e.g., Willner v. Manpower Inc.*, 2015 WL 54349, at *3-4 (N.D. Cal. 2015) ("The Court GRANTS the parties' request for certification. . . . Certification under this Order is for settlement purposes only, and shall not constitute or be construed as an admission by Defendant that this action is appropriate for class treatment for litigation purposes"); *Nen Thio v. Genji, LLC*, 14 F. Supp. 3d 1324, 1342 (N.D. Cal. 2014) ("The Court grants preliminary approval of the settlement [and] conditionally certifies the class and collective action for settlement purposes"); *Fraley ex rel. Duval v. Facebook, Inc.*, No. CV-11-01726 RS, 2012 WL 6013427, at *2 (N.D. Cal. Dec. 3, 2012) ("The Class is provisionally certified, for settlement purposes only").

(e) Persons who timely opt out of the Settlement Class by requesting exclusion pursuant to Paragraph **Error! Reference source not found.**.

*Id.*, at ¶ 2.3.

This Settlement Class definition sets forth an identifiable class, and generally tracks the putative class definition originally pled in the FAC.  *See* FAC, at ¶ 78 (alleging class definition).  *See* Procedural Guidance for Class Action Settlements, Preliminary Approval, Section 1.a.  The main difference between the class definition initially pled and the Settlement Class definition is that the latter is limited to those California purchasers of NFL-branded apparel that was subject to exclusive agreement with Reebok (i.e., jerseys, caps, and shoes), and excludes apparel categories that were not subject to this exclusivity.  Ascertainment of which apparel categories were subject to what exclusivity terms, if any, was confirmed during the course of protracted discovery obtained in this action.  *See* Katriel Decl., at ¶ 2.2

Because the Settlement Class meets all the requirements of Rule 23, it should be certified for settlement purposes.  While the Court is charged with scrutinizing the certification of a settlement class under Rule 23, the settlement context of the class certification plea makes at least some of the Rule 23 criteria inapplicable to this unopposed request.  Thus, for example, while "manageability" is a factor to assess in deciding whether the superiority requirement has been met when class certification is sought as part of an adversarial trial process, "a settlement class need not be 'manageable' as a trial class action because no trial will occur."  *Browning v. Yahoo! Inc.*, 2007 WL 4105971, at *9 (N.D. Cal. Nov. 16, 2007) (*citing Amchem Prods. v. Windsor*, 521 U.S. 591, 619 (1997)).  Regardless, the proposed Settlement Class is eminently certifiable under these particular standards.

### 1.   The Settlement Class Satisfies The Numerosity Requirement.

Rule 23(a)(1) requires that "the class [be] so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  It is undisputed that this action meets the numerosity requirement.  The Settlement Class definition captures within it all sales in California during the Class Period of NFL-branded jerseys, caps and shoes.  Common sense dictates that the number of purchasers involved in such transactions readily meets the numerosity requirement.  *See In re Rubber Chemicals Antitrust Litig.*, 232 F.R.D. 346, 350 (N.D. Cal. 2005) (in determining numerosity, "[a] court may make

9

common sense assumptions to support a finding that joinder would be impracticable."). But, one need not rely on mere commons sense. Material obtained by Villa's counsel during discovery in this action confirms that approximately 2,000,000 such California sales of this apparel manufactured by Reebok under license with the NFLP took place during the Class Period. *See* Katriel Decl., at ¶ 3[3]. . Even if one accounts for the fact that some purchasers bought more than one such item of apparel, that would still mean that the Settlement Class would likely comprise over one million persons. This more than satisfies the numerosity requirement for class certification. *See Lowdermilk v. United States Bank National Assoc.*, 479 F.3d 994, 997 (9th Cir. 2007) (numerosity criteria satisfied by plaintiff's mere allegation that class size "exceeds 30 persons.").

## 2. The Settlement Class Satisfies The Commonality Requirement.

Rule 23(a)(2) requires that "there [be] questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "To establish commonality, '[t]he existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies.'" *Parra v. Bashas, Inc.*, 536 F.3d 975, 978 (9th Cir. 2008) (*quoting Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998)). Here, this commonality requirement is met because the claims of all absent class members arise from the same allegation in the FAC; namely, did agreements among the rival NFL teams and the NFLP, and did a separate agreement between the NFLP and Reebok, regarding the exclusive licensing of the individual teams' intellectual property for use in apparel restrain trade and result in overcharges that were passed on California indirect purchasers of such apparel? *See* FAC, at ¶ 81 (alleging common questions raised by Defendants' alleged conduct).

Further, the Settlement Class also shares this commonality requirement in that all Settlement Class Members who made such purchases will benefit from the Settlement Agreement's consideration (which is made available to all California purchasers during the Class Period of NFL-branded jerseys, caps, or shoes—apparel items that were subject to both of the agreements alleged in the FAC).

## 3. The Settlement Class Satisfies The Typicality Requirement.

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the

---

[3] This amount excludes sales of such apparel that was manufactured by Reebok sublicensees for which the discovery produced does not track California sales separately.

claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).  "The typicality prerequisite of Rule 23(a) is fulfilled if 'the claims or defenses of the representative parties are typical of the claims or defenses of the class.'"  *Simpson v. Fireman's Fund Ins. Co.*, 231 F.R.D. 391, 396 (N.D. Cal. 2005) (quoting *Hanlon*, 150 F.3d at 1020.  "[R]epresentative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical."  *Hanlon*, 150 F.3d at 1020. In determining whether typicality is met, the focus should be "'on the defendants' conduct and plaintiff's legal theory,' not the injury caused to the plaintiff."  *Simpson*, 213 F.R.D at 396 (quoting *Rosario v. Livaditis,* 963 F.2d 1013, 1018 (7th Cir. 1992)).  Typicality does not require that "all class members suffer the same injury as the named class representative."  *Id*.

The typicality criterion is satisfied in this case.  During the Class Period, Plaintiff Michael Villa made a purchase in California of a jersey bearing the logo of the San Diego Chargers.  *See* FAC, at ¶ 5. He documented that purchase during his deposition, and produced a proof of purchase for the same as part of his responses to Defendants' discovery requests in this action.  *See* Katriel Decl., at ¶ 4.   Because Plaintiff is a member of the proposed Settlement Class, and asserts the same causes of action on behalf of himself and all absent class members, the FAC and the Settlement Class meet the typicality requirement for class certification.

### 4.   The Settlement Class Satisfies The Adequacy Requirement.

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020.  There are no conflicts of interest alleged or that could possibly exist here. Named Plaintiff Villa seeks the exact same remedy as all class members; namely, relief to address the claim that he, like all California indirect purchasers of NFL-team branded apparel that was subject to exclusivity restrictions in the NFL Defendants' and Reebok's licensing agreements, were subjected to an overcharge for their purchases of such apparel.  All items of apparel forming part of the Settlement Class definition (i.e., jerseys, caps, and shoes) were subject to the same exclusivity terms in the NFL-Reebok agreement, such that Plaintiff's interests are perfectly aligned with the interests of the Settlement Class

members.

Further, named Plaintiff Villa and his counsel are adequate class representatives.  This is evidenced, in the first instance, by the fact that Villa and his counsel have managed to negotiate this Settlement Agreement with the NFL Defendants and Reebok, so as to grant meaningful relief to the class.  This is particularly noteworthy, given that Villa and his counsel succeeded in this result without the aid or involvement of any governmental entity.  Unlike many private antitrust class actions that reach settlement, Villa's lawsuit did not rely upon, and was not assisted by, any action brought by the United States Department of Justice or the Federal Trade Commission.   Counsel for Plaintiffs are highly experienced in class action litigation, and have been involved in many class action settlements and actions.  *See* Exs. 1-2 to Katriel Decl. (resumes of class counsels' law firms). Their track record in this action before this Court evidences their adequacy to serve as Class counsel.

### 5.   The Settlement Class Satisfies The Necessary Criteria Of Rule 23(b).

In addition to meeting all the class certification requirements enumerated in Rule 23(a), a movant must also satisfy at least one of the requirements of Rule 23(b).  *See Zinser v. Accufix Research Int., Inc.* 253 F.3d 1180, 1886*, amended* 273 F.3d 1266 (9th Cir. 2001).   Here, the settlement provides monetary relief, so the appropriate criteria is set forth in Rule 23(b)(3), which provides that class certification is appropriate if the criteria of Rule 23(a) are met, and if:

> [T]he court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

Fed. R. Civ. P. 23(b)(3).

These so-called "predominance" and "superiority" requirements of Rule 23(b)(3) are also readily met in this case. "To establish predominance of common issues, a party seeking class certification is not required to show that the legal and factual issues raised by the claims of each class member are identical. Instead, the predominance inquiry focuses on whether the proposed class is 'sufficiently cohesive to warrant adjudication by representation.'" *Friedman v. 24 Hour Fitness USA Inc.*, 2009 WL 2410889, at *6 (C.D. Cal. Aug. 6, 2009) (*quoting Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001)).  Here, this cohesiveness assuredly exists

12

because the overarching inquiry and interest of all putative class members is whether the members of the

Settlement Class are entitled to reimbursement for any overcharge allegedly incurred by them in

purchasing NFL-branded apparel items in California during the Class Period that were subject to

exclusivity provisions in contractual agreements between the NFL and Reebok.  Plaintiff maintained in

his class certification motion that this evidence and proof as to the existence of a legally cognizable

claim to obtain such relief would predominate over any individual issues in adjudicating this case.

Similarly, the "superiority" requirement of Rule 23(b)(3) is also met in this case.  In determining

the superiority of a class action, courts consider the following four factors: (1) the class members'

interests in individually prosecuting separate actions; (2) whether any litigation concerning the

controversy has already been brought by class members; (3) the desirability of concentrating the

litigation of the claims in the particular forum; and (4) the likely difficulties in managing a class action.

*See* Fed. R. Civ. P. 23(b)(3)(a)-(d).  Here, those factors clearly militate in favor of class certification.

The cost of individually litigating this case against the NFL Defendants and Reebok would easily exceed

the cost of any relief that could be obtained by any lone purchasers of NFL-branded apparel.   Indeed, as

will be documented in Villa's counsel motion for attorneys' fees and reimbursement of expenses,

counsel spent hundreds of thousands of dollars to date in litigating this action, even before merits

discovery closed.  *See* Katriel Decl., at ¶ 5.   Clearly, this significant expenditure could not be justified in

an action that sought relief only on an individual basis.  This, alone, warrants a finding that a class action

is a superior method of adjudication.  *See Tchoboian v. Parking Concepts, Inc.*, 2009 WL 2169883, at

*7 (C.D. Cal. Jul. 16, 2009) (granting motion for class certification and noting that "[t]his superiority

inquiry requires a comparative evaluation of alternative mechanisms of dispute resolution.");

*Baghdasarian v. Amazon.com, Inc.*, 2009 WL 2263581, at *7 (C.D. Cal., Jul. 7, 2009) (granting motion

for class certification and noting that the superiority inquiry is geared to address "the problem that small

recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her

rights.").

Because the proposed Settlement Class meets all the applicable requirements for certification

under Federal Rule of Civil Procedure 23, the class should be conditionally certified from purposes of

settlement.  At the Fairness Hearing, the Court will have the further opportunity to revisit this

13

conditional certification in deciding whether to grant Final Approval to the Settlement Agreement.

**B.      The Notice Plan Should Be Approved.**

Rule 23 and due process require that notice be provided to absent class members in order to inform them of the proposed settlement, and grant them the opportunity to opt-out or object.  *See* Fed. R. Civ. P. 23(c)(2).  The notice and means of disseminating it must be the "best notice practicable" under the circumstances.  *See Mullane v. Central Hanover Trust*, 339 U.S. 306, 314 (1950).  Here, individual direct notice to class members is not possible because the Settlement Class is comprised of indirect purchasers, such that identifying information of the individual end-user purchasers of apparel is not available to any of the parties.  The Settlement Agreement, therefore, properly proposes to disseminate the notice of the proposed class action settlement by way of repeated print publication and a robust online notice campaign.  *See* Dahl Decl., at ¶¶ 10-33 (detailing Notice Plan and its reach); Settlement Agreement, at ¶¶ 7.1 – 7.2 (setting forth Notice Plan and notice terms under the Settlement Agreement). The print publication consists of publication of the Summary Notice in the following prominent California newspapers: Los Angeles Times, San Francisco Chronical, San Diego Union Tribune, Sacramento Bee, San Jose Mercury News, and the Fresno Bee.  *See* Dahl Decl., at ¶ 19.   Moreover, as set forth in the Grudnowski Declaration, the online component of the Notice Plan makes use of the Settlement Class demographic and other data to place ads linking to the Summary Notice or settlement website in popular websites visited by members of the Settlement Class, search engine results related to the action subject-matter, and also makes use of online media like Facebook to target the online notice campaign to webpages that are "liked" by the Facebook profiles of members of the Settlement Class. *See* Grudnowski Decl., at ¶¶ 20-24.   The Notice Plan was designed to target the members of the California Settlement Class, and is expected to produce some 54.3 million notice impressions, reaching at least 80% of the target audience with a frequency of at least 2.0.  *See id.*, at ¶ 7.  The breadth of this Notice Plan and its reach readily comports with, or exceeds, notice plans that have been approved in other classwide settlements.   See, e.g.,  *In re Heartland Payment Systems, Inc. Customer Data Sec. Breach Litig.,* 851 F.Supp.2d 1040, 1061 (S.D.Tex.2012) (notice plan that expert estimated would reach 81.4% of class was sufficient); *Alberton v. Commonwealth Land Title Ins. Co.,* No. 06–

14

3755, 2008 WL 1849774, at *3 (E.D.Pa. Apr. 25, 2008) (direct notice projected to reach 70% of class plus publication in newspapers and Internet was sufficient); *Grunewald v. Kasperbauer,* 235 F.R.D. 599, 609 (E.D.Pa. 2006) (direct mail to 55% of class and publication in three newspapers and Internet was sufficient).  Indeed, this Court has recently approved a print and online notice plan that was far less robust than the one proposed here.  *See Evans v. Linden Research*, 2013 WL 5781284, at *3 (N.D. Cal. Oct. 25, 2013) (granting preliminary approval to print and online notice plan that called for banner advertising linking to notice where such banners were featured on only six websites).

    The proposed form and content of the notice also complies with due process and Rule 23.  The proposed long-form notice is attached as Exhibit A to the Settlement Agreement, and informs absent class members as to the terms of the settlement, their right to avail themselves of the settlement, opt-out, or object, as well as the binding effect of the settlement on members of the Settlement Class.  *See* Ex. A to Settlement Agreement.   In addition, a Summary Notice provides the essential terms and necessary information to the target members of the Settlement Class.  *See* Ex. A to Settlement Agreement.  The form of notice and its plan of dissemination should, therefore, also be approved.

### C.    The Substantive Terms of The Settlement Are Fair, And Should Be Granted Preliminary Approval.

    Preliminary approval should also be granted to the settlement because its terms are fair and reasonable.  Ultimately, the decision as to whether to grant preliminary approval to a settlement of a class action is a matter left to the discretion of the trial court.  *See Castro v. Zenith Acquisition Corp.*, 2007 WL 81905, at *1 (N.D. Cal.  Jan. 9, 2007).  In exercising that discretion, the Court should bear in mind that "there is an overriding public interest in settling and quieting litigation," and this is "particularly true in class action suits." *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976).  Recognizing that a settlement represents an exercise of judgment by the negotiating parties, *Torrisi v. Tucson Elec. Power*, 8 F.3d 1370, 1375 (9th Cir. 1993), the Ninth Circuit has held that "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the

settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice v. Civil Service Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).

The general standard by which courts are guided when deciding whether to grant preliminary approval to a class action settlement is whether the proposed settlement falls within the range of what could be "fair, adequate, and reasonable," so that notice may be given to the proposed class, and a hearing for final approval may be scheduled. *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *see also Gattreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982) (If the court finds that the proposed settlement is "within the range of possible approval" and that notice should be given, "the next step is the fairness hearing."). An evaluation of the benefits under any proposed settlement "must also be tempered by the recognition that any compromise involves concessions on the part of all the settling parties. Indeed, 'the very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes.'" *In re NVIDIA Corp. Derivative Litig.*, No. C-06-061100-SBA (JCS), 2009 U.S. Dist. LEXIS 24973, *16 (N.D. Cal. Mar. 18, 2009) (*quoting Officers for Justice*, 688 F.2d at 624).

This proposed settlement assuredly satisfies the foregoing criteria. The terms of the settlement provide class members with meaningful relief that addresses the precise legal injury that was alleged in the FAC. Unlike notorious class settlements that release class member claims for mere pennies on the dollar, here the recovery offered is real, substantial, and, depending on the actual claims rate, actually could exceed the recovery that would have been available to class members after prevailing at trial. Each qualifying Settlement Class member, with or without a proof of purchase, is entitled to receive at least some reimbursement. *See* Settlement Agreement, at ¶ 4.1.6. While the amounts actually paid to each individual claimant submitting a valid claim will depend on, *inter alia*, the number of claims actually submitted, the Settlement Agreement's consideration is presumptively fair and reasonable. To be fair, a settlement need not (even though this Settlement Agreement possibly could) reimburse class members who submit claims for all their claimed damages, or even a majority of that amount. The nature of a compromise that takes into account the risks of continued litigation makes the offering of even vastly reduced consideration in compromise of the disputed claims perfectly proper. *See, e.g.,*

*McPhail v. First Command Fin. Planning, Inc.*, Case No. 05cv179-IEG-JMA, 2009 U.S. Dist. LEXIS 26544,  *21-22 (S.D. Cal. Mar. 30, 2009) ("the result achieved, a 7% recovery of the estimated damages, falls within the range of typical recoveries in complex securities class actions."); *Weeks v. Kellogg Co.,* Case No. CV 09-081022011, 2011 U.S. Dist. LEXIS 155472, *54 n. 85 (C.D. Cal. Nov. 23, 2011) (granting final approval where "[t]he $15 settlement amount is approximately 10 percent of this total damages figure."); *In re Cendant Corp. Litig.*, 264 F.3d 201, 241 (3rd Cir. 2001) (noting that recoveries can range from 1.6% to 14% 0and affirming settlement representing 36% of recovery); *Newman v. Stein*, 464 F.2d 689 (2d Cir. 1972) (approving settlement representing 14% of potential recovery); *Nichols v. SmithKline Beecham Corp.,* 2005 WL 950616, at *16 (E.D. Pa. Apr. 22, 2005) (approving settlement that represented between 9.3% and 13.0% of claimed damages).

Here, the settlement consideration is to be disbursed to only a Settlement Class consisting entirely of Persons making Eligible Purchases in California. This single state class limitation is relevant in assessing the propriety of the settlement consideration.  This settlement's provision of $4,750,000 in cash consideration for a California-only class compares favorably to multiple California-only settlement classes.  *See, e.g.*, *Tadepalli v. Uber Techs., Inc.*, 2015 WL 9196054 (N.D. Cal. 2015) (preliminary approval granted for approximately $2 million settlement for California-only class); *Beck-Ellman v. Kaz USA, Inc.*, 2013 WL 1748729 (S.D. Cal. 2013) (final approved granted for settlement providing $1.45 million to $2.7 million in payments to California-only class).  Indeed, the settlement amount is within the range of court-approved settlement consideration paid by defendants to resolve nationwide or multistate classwide settlements.  *See, e.g., Galluci v. Gonzales*, 603 Fed. Appx. 533, 535 (9th Cir. 2015) (affirming district court's final approval of nationwide settlement and finding that "the Settlement's $5 million common fund was intended to be—and by all accounts, is in fact—more than adequate to compensate all class members who submitted refund claims."); *In re Google Referrer Header Privacy Litig.*, 87 F. Supp.3d 1122, 1128 (N.D. Cal. 2015) (Davila, J.,) (in action involving 129 million settlement class members granting final approval to class settlement that called for $8.5 million in settlement consideration).

The risks of continued litigation here are real.  Defendants' counsel have repeatedly alerted Villa's counsel that, had the case continued to be litigated in adversarial fashion, the NFL Defendants

17

and Reebok were prepared to litigate the case through to trial and appeal.  Indeed, in the related

American Needle v. New Orleans Louisiana Saints antitrust action, the NFL Defendants litigated that

case all the way to the United States Supreme Court.  *See American Needle Inc. v. National Football

League*, 560 U.S. 183 (2010).  Whatever outcome those proceedings would produce in this action, it

would necessarily take years to materialize, such that many Settlement Class members would already

have disposed of their NFL apparel, proof of purchase, or otherwise would have incurred significant

delay in realizing any benefits from this litigation.

Although Villa and his counsel remain confident in the merits of this case, the very nature of

adversarial class litigation means that results are not predictable with any degree of certainty.  Here,

class certification was hotly contested, and the Court had yet to rule on Villa's class certification motion

after that motion had been fully briefed and argued.  So too, Defendants had previously filed a motion

for judgment on the pleadings, seeking to dismiss all of the claims for monetary relief in this case.  *See*

Dkt. No. 51.  Although the Court denied that motion, it did so without prejudice to it being revisited at a

later stage in the litigation.  *See Dang. v. San Francisco Forty Niners, Ltd.*, 2014 WL 4275627, at *5

(N.D. Cal. Aug. 29, 2014) (Davila, J.,) (denying Defendants' motion for judgment on the pleadings but

holding that "Defendants are not precluded from again raising these issues at a later date, such as in a

motion for summary judgment.").  Any adverse ruling on either of these two motions (or any adverse

ruling on future anticipated motions on the merits or at trial) would either dispose of or significantly

limit the scope of the case.  Also, Defendants have maintained (and continue to maintain) that they had

full defenses to the claims asserted in the FAC and intended to contest both liability and damages

vigorously. A classwide settlement that provides Settlement Class members real and tangible benefits

cannot be said to be unreasonable or unfair when the plaintiff class faces risks of loss at trial and there

exist pending motions that, if granted, could result in no monetary recovery being had by any member of

the proposed class.

**D.    The Settlement Was a Product of Adversarial Arms'-Length Negotiation.**

That the discussions and negotiations leading up to the settlement were conducted in vigorous,

adversarial, and arms-length fashion also serves as an added indicia of the fairness of the settlement.

Here, settlement negotiations were not even broached in earnest until the parties had exchanged

18

meaningful discovery, including depositions and thousands of pages of documents produced in response to discovery demands. Villa's counsel also had retained and submitted the expert reports of Dr. Russell Mangum, an expert economist, and Dr. Bruce Isaacson, a survey and marketing expert, before an in-person mediation session was had with all Defendants and their counsel. *See* Katriel Decl., at ¶ 5. That mediation, presided over by the Honorable A. Howard Matz (Ret.), did not result in a settlement, further reinforcing the adversarial and contentious nature of the settlement discussions. Indeed, this settlement agreement comes about more than a year after the mediation session was concluded, and after the class certification motion was fully briefed and argued. Leading up to the class certification motion, hundreds of thousands of pages had been produced by the defendants, and all four expert witnesses had been deposed over the course of several days. *Id.* Thus, at the point of settlement discussions, each side had a bona fide basis on which to make an informed assessment of the value, strengths, and potential weaknesses of their respective case and defenses.

Because the proposed settlement amounts to a reasonable means of resolving this litigation, and because the risks and expenses inherent in continuing to litigate this matter are significant and uncertain, this proposed settlement should be preliminarily approved.

## **CONCLUSION**

For all the foregoing reasons, the unopposed motion for preliminary approval should be GRANTED.

Dated: February 25, 2016          _____/s/ Roy A. Katriel_____
                                 Roy A. Katriel (SBN 265463)
                                 THE KATRIEL LAW FIRM
                                 4225 Executive Square, Suite 600
                                 La Jolla, CA 92037
                                 Telephone: (858) 242-5642
                                 Facsimile:   (858) 430-3719

                                 Ralph B. Kalfayan (133464)
                                 **KRAUSE, KALFAYAN BENINK & SLAVENS, LLP**
                                 550 West C Street, Suite 530
                                 San Diego, CA 92101
                                 Telephone: (619) 232-0331
                                 Facsimile: (619) 232-4019
                                 E-mail:rkalfayan@kkbs-law.com

                                 *Counsel for Plaintiff and the Putative Class*