Roy A. Katriel (265463)
**THE KATRIEL LAW FIRM**
4225 Executive Square, Suite 600
La Jolla, CA 92037
Tel:     (858) 242-5642
Fax:     (858) 430-3719
E-mail: rak@katriellaw.com

Ralph B. Kalfayan (133464)
**KRAUSE, KALFAYAN BENINK & SLAVENS, LLP**
550 West C Street, Suite 530
San Diego, CA 92101
Telephone: (619) 232-0331
Facsimile: (619) 232-4019
E-mail:rkalfayan@kkbs-law.com

*Class Counsel*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| MICHAEL VILLA, On Behalf Of Himself And All Others Similarly Situated,<br><br>                    Plaintiff,<br><br>          vs.<br><br>SAN FRANCISCO FORTY NINERS, LTD., et. al.<br><br>                    Defendants. | Case No.  12-cv-5481-EJD<br><br>**CLASS ACTION**<br><br>**PLAINTIFF'S NOTICE OF MOTION, MOTION, AND MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF COSTS AND EXPENSES, AND INCENTIVE AWARD**<br><br>**Judge: Hon. Edward J. Davila**<br>**Courtroom: 4, 5th Floor**<br>**Hearing Date:  November 17, 2016**<br>**Hearing Time: 9:00 am** |

**TABLE OF CONTENTS**

NOTICE OF MOTION AND MOTION…………………………………………………...…………1

MEMORANDUM IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF COSTS AND EXPENSES, AND APPROVAL OF INCENTIVE AWARD………………………………………………...………1

I.      INTRODUCTION AND SUMMARY OF ARGUMENT………………………………1

II.     THE CLASSWIDE SETTLEMENT ACHIEVED AFTER YEARS OF LITIGATION AGAINST OVER 30 DEFENDANTS………………………………………….………...4

III.    VILLA'S COUNSEL ARE ENTITLED TO SEEK AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF COSTS…………………………………….………6

      A.     The Fee Shifting Statutes, Settlement Agreement, And Rule 23(h) Provide For An Award Of Attorneys' Fees………………………………………………….6

      B.     Calculation Of The Fee Award Due In This Cartwright Act Action, Must Be Made By Resort To State Law, Which Mandates The Use Of The "Lodestar" Methodology………………………………………………………………………...7

IV.    VILLA'S COUNSEL'S REQUEST FOR REIMBURSEMENT OF LITIGATION COSTS INCURRED SHOULD BE GRANTED……………………………………...……9

V.     THE FEE REQUEST IS REASONABLE AND SHOULD BE APPROVED…………...12

      A.     The Fee Requested Is Reasonable Under The Applicable Lodestar Approach………12

           1.    The Lodestar Hourly Billing Rates Are Reasonable………………………..13

           2.    The Tasks Performed And Hours Spent Are Reasonable…………..………….15

           3.    Although Class Counsel Do Not Affirmatively Seek a Lodestar Enhancement Multiplier, They Are Entitled To One…………………………………….…20

      B.     Although Not The Standard Governing This Fee Motion, The Percent-Of-The Fund Method Provides A Cross-Check That Confirms The Reasonableness Of The Fee Request……………………………………………………….…………………23

VI.    THE INCENTIVE AWARD REQUESTED IS REASONABLE, AND SHOULD BE APPROVED………………………………………………………...…………24

CONCLUSION………………………………………………………………25

i

1

**TABLE OF AUTHORITIES**

2

**Cases:**

3
*American Needle v. National Football League*,
560 U.S. 183 (2010)……………………………………………………..…………22

4

5
*American Needle v. New Orleans Louisiana Saints*,
2014 WL 1364022 (N.D. Ill. Apr. 7, 2014)……………………………..………22

6

7
*Barbosa v. Cargill Meat Solutions Corp.*,
297 F.R.D. 431 (E.D. Cal. 2013)……………………………………..………24

8
*Bellinghausen v. Tractor Supply Co.*,
2015 WL 1289342 (N.D. Cal. Mar. 20, 2015)………………………………25

9

10
*Camacho v. Bridgeport Fin., Inc.*,
523 F.3d 973 (9th Cir. 2008)……………………………………………………13

11

12
*Coles v. City of Oakland*,
2007 WL 39304 (N.D. Cal. Jan. 4, 2007)………………………………….…20-21

13
*Collado v. Toyota Motor Sales U.S.A., Inc.*,
550 Fed. Appx. 368 (9th Cir. 2013).........................................................................8

14

15
*Davis v. Prison Health Servs.*,
2012 WL 446520 (N.D. Cal. Sept. 25, 2012)……………………………..........14

16

17
*Fischel v. Equitable Life Assurance Society of U.S.*,
307 F.3d 997 (9th Cir. 2002)……………………………………………….......19

18

19
*Frey v. Foxx*,
2007 WL 1041680 (Cal. App. Apr. 9, 2007)……………………………………9

20
*Guerrero v. California Dept. of Corrections and Rehabilitation*,
2016 WL 3360638 (N.D. Cal. Jun. 16, 2016)…………………………………13

21

22
*Gonzales v. Southern Wine & Spirits of America, Inc.*,
555 Fed. Appx. 704 (9th Cir. 2014)……………………………………..………8

23

24
*Harris v. Marhoefer*,
24 F.3d 16 (9th Cir. 1994)……………………………………………..………10

25

26
*In re CRT Antitrust Litig.*,
2016 WL 183285 (N.D. Cal. Jan. 14, 2016)…………………………………10

27
*In re Google Referrer Header Privacy Litig.*,
87 F. Supp.3d 1122 (N.D. Cal. 2015)………………………………………25

28

ii

*In re High-Tech Employee Antitrust Litig.*,
2015 WL 5158730 (N.D. Cal. Sept. 2, 2015)…………………………………………………..14, 15, 18-19

*In re HP Inkjet Printer Litig.*,
716 F.3d 1173 (9th Cir. 2013)……………………………………………………...………...24

*In re Linkedin User Privacy Litig.*,
309 F.R.D. 573(N.D. Cal. 2015)…………………………………………………………...24

*In re Pac. Enters. Sec. Litig.*,
47 F.3d 373 (9th Cir. 1995)…………………………………………………………………24

*In re Pharmaceutical Industry Average Wholesales Price Litig.*,
588 F.3d 24 (1st Cir. 2009)…………………………………………………………….……5

*In re Publication Paper Antitrust Litig.*,
2009 WL 2351724 (D. Conn. Jul. 30, 2009)………………………………………….……5

*Ketchum v. Moses*,
24 Cal.4th 1122 (2001)……………………………………………………...……………21

*Loera v. County of Los Angeles*,
2005 WL 1225982 (C.D. Cal. Mar. 21, 2005)………………………………………………21

*Mangold v. California Public Utilities Comm'n*,
67 F.3d 1470 (9th Cir. 1995)……………………………………………………………8

*Mannick v. Kaiser Foundation Health Plan, Inc.*,
2007 WL 2892647 (N.D. Cal. Sept. 28, 2007)……………………………………………21

*Masters v. Wilhelmina Model Agency, Inc.*,
473 F.3d 423 (2nd Cir. 2007)……………………………………………………………..5

*Mego Fin. Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir. 2000)…………………………………………………...…….23-24

*Meister v. The Regents of the Univ. of California*,
67 Cal. App.4th 437 (1998)………………………………………………...…………8-9

*Navarro v. Servisair*,
2010 WL 1729538 (N.D. Cal. Apr. 27, 2010)…………………………………..……25

*Phemister v. Harcourt Brace Jovanovich, Inc.*,
1984 WL 21981 (N.D. Ill. Sept. 14, 1984)………………………………………………22

*Prison Legal News v. Schwarzenegger*,
608 F.3d 446 (9th Cir. 2010)………………………………………………………...14

iii

*Rodriguez v. West Pub. Corp.*,
563 F.3d 948 (9th Cir. 2009)…………………………………………………..……….24

*Rose v. Bank of America, Corp.*,
2014 WL 4273358 (N.D. Cal. Aug. 29, 2014)………………………………………..12

*Seifi v. Mercedes-Benz USA, LLC*,
No. 3:12-cv-5493-TEH (N.D. Cal. filed Jun. 12, 2015)…………………………….....14

*Serrano v. Priest*,
20 Cal.3d 25 (1977)………………………………………………………………….....21

*Six Mexican Workers v. Arizona Citrus Growers*,
904 F.2d 1301 (9th Cir. 1990)…………………………………………………………23

*Staton v. Boeing Co.*,
327 F.3d 938 (9th Cir. 2003)…………………………………………….…….12, 23

*Stonebrae, L.P. v. Toll Bros., Inc.*,
2011 WL 1334444 (N.D. Cal. Apr. 7, 2011)…………………………………………14

*Vasquez v. Coast Valley Roofing, Inc.*,
266 F.R.D. 482 (E.D. Cal. 2010)……………………………………..……………24

*Vizcaino v. Microsoft Corp.*,
290 F.3d 1043(9th Cir. 2002)………………………………………..……………23

*Wren v. RGIS Inv. Spec.*,
2011 WL 1230826 (N.D. Cal. Apr. 1, 2011)…………………………….…………10

**Statutes And Rules:**

Fed. R. Civ. P. 23(h)………………………………………………………1, 6, 7, 10

Calif. Bus. and Prof. Code, § 16750(a)………………………..……………..6, 8, 10

**Treatises:**

3 Newberg on Class Action, § 14.03……………………………………………23

**News Articles:**

Jennifer Smith, *Biggest Lawyers Grab Fee Bounty*, Wall Street Journal, Apr. 15, 2011 ………………15

Vanessa O'Connell, *Big Law's $1,000-Plus an Hour Club*, Wall Street Journal, Feb. 23, 2011...………15

iv

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE THAT on November 17, 2016, at 9:00 a.m., at Courtroom 4 of the United States District Court for the Northern District of California, San Jose Division, in San Jose, California, or at such other time or place as this Court may Order, pursuant to the terms of the classwide Settlement Agreement previously granted preliminary approval by the Court [Dkt. No. 155] and Federal Rule of Civil Procedure 23(h), Plaintiff Michael Villa ("Plaintiff" or "Villa"), by and through his undersigned counsel, will and does hereby move this Court for an Order awarding Villa's counsel their reasonable attorneys' fees, reimbursing their costs and expenses incurred in pursuing this litigation, and approving an incentive award for Plaintiff Michael Villa in recognition of his investment of time and effort in pursuing this action for the benefit of the members of the Settlement Class.

This motion is unopposed by Defendants, and is supported by the accompanying Memorandum in Support, as well as the Declarations of Roy A. Katriel ("Katriel Decl.") and of Ralph B. Kalfayan ("Kalfayan Decl."), both of which are being filed herewith.

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF COSTS AND EXPENSES, AND APPROVAL OF INCENTIVE AWARD**

**I.      INTRODUCTION AND SUMMARY OF ARGUMENT.**

Class Counsel seek an Order from this Court reimbursing them for the $ 847,184.64 in out-of-pocket expenses incurred in prosecuting this action, awarding them $1,522,815.00 in reasonable attorneys' fees earned, and approving a $ 5,000 incentive award to be paid to named plaintiff Michael Villa in recognition of his efforts and responsibilities undertaken in this action for the benefit of the absent class members.  The requested fee amount represents $ 169,425.50 less than the actual $ 1,692,240.50 in billable work performed by Class Counsel.  That is, in order to maximize the amount of settlement benefits that will be made available to eligible members of the Settlement Class, Class Counsel have agreed to forego approximately 10 percent of their fees earned in this case and voluntarily seek a .90 negative multiplier to their actual lodestar amount.

After four years of litigation against 33 defendants, in which hundreds of thousands of pages of discovery from all defendants were produced and reviewed, four expert economists and survey experts

*Villa v. San Francisco Forty Niners, Ltd.,*                                                    Pltff's Motion for Attorneys' Fees
Case No.  12-cv-5481-EJD

were employed and deposed, and numerous fact depositions were taken and defended in this or a parallel competitor antitrust case, Plaintiff Michael Villa and his counsel successfully negotiated an outstanding classwide settlement to which the Court has already granted preliminary approval.  *See* Dkt. No. 155 (Court's Order Granting Preliminary Approval to Classwide Settlement).   The settlement came about despite an unsuccessful mediation presided over by the Honorable Howard A. Matz (Ret.), after which the parties continued discussing the prospect of settlement.   Although the claims submission period for the settlement remains open as of the date of this filing, the Settlement Administrator and Class Counsel project, based on the current claims rate and the number of claims already filed, that the settlement fund will be fully disbursed, such that no residual contingent *cy pres* distribution will remain, and all settlement class members who filed eligible claims will obtain their full settlement recovery that will be either trebled or nearly trebled. *See* Katriel Decl., at ¶ 2.  By way of reference, those settlement class members who submit proofs of purchase will have obtained not merely recompense for some portion of their alleged overcharge damages, but will receive a full reimbursement of *their entire purchase amount* for the eligible items of NFL team-branded apparel purchased.  This is a virtually unprecedented result for a consumer antitrust class settlement—class members receiving in a settlement more than they could obtain even if they had been successful litigants at trial and on any appeal.

       This result did not come about fortuitously.  It is a function of the considerable and significant investment of time, effort, and resources expended by Class Counsel in vigorously prosecuting this action on behalf of the Class.   For example, Class Counsel incurred $ 847,184.64  in actual out-of-pocket costs and expenses to prosecute this action and to bring about the settlement for the benefit of class members.  *See* Section IV *infra* (detailing litigation expenses documented in the Katriel and Kalfayan Declarations).  This sizeable investment by a solo practitioner and a small plaintiff's law firm speaks to the commitment of Villa's counsel to aggressively represent the class members' interests.  Beyond that, over the four years of litigation, Class Counsel and their staff devoted 2,781.35 billable hours to working on this case—all work that was necessary and reasonable in prosecuting this case.  Counsel, for example, were faced with three rounds of dispositive motions: the Defendants' motion to dismiss (which Villa's counsel defeated in its entirety); the NFL Defendants' separate motion for partial judgment on the pleadings as to all the money damages claims (which Villa's counsel again defeated in

its entirety); and, Villa's own cross-motion for partial summary judgment (which the Court denied without prejudice as premature in light of the one-way intervention bar generally precluding such motions prior to class certification).   *See*  Section V.A. infra (detailing lodestar hours worked and tasks performed as documented in the Katriel and Kalfayan Declarations).  Aside from this intensive adversarial litigation on the merits, Villa's counsel also fully briefed, filed, and orally argued their motion for class certification, which remains pending.   That last effort alone involved the work, declarations, and deposition of four experts: Dr. Russell Mangum III, Ph.D. (plaintiff's antitrust expert economist); Dr. Bruce Isaacson (plaintiff's expert survey and marketing expert); Dr. Lauren Stiroh (defendant's antitrust expert economist); and, Dr. Randolph E. Bucklin (defendant's expert marketing expert).  Some of these experts (Drs. Mangum and Isaacson), in fact, submitted multiple expert reports.

The attorneys' fee award sought by Class Counsel is inherently reasonable.  It represents a *negative* lodestar, meaning that Class Counsel are seeking to recover *less* than the actual amount of billable work that they provided.  This concession is being proffered by Class Counsel so that the settlement benefits afforded to the Settlement Class members, including the settlement's potential trebling provisions, will be maximized.

As detailed in Section III.B. *infra*, Ninth Circuit precedent is clear that, although generally there are two available methods to calculate the amount of an attorney fees award—the lodestar approach and the percentage of the fund method—when, as here, the settled claims all arise under state law (i.e., all asserted counts that form part of the settlement arise under the California Cartwright Act or Unfair Competition Law), a federal court must resort to the lodestar method to calculate the attorney fee award. Employing the percentage-of-the-fund method instead of the lodestar approach in these circumstances is reversible error.   Regardless, while Class Counsel's fee request is assuredly reasonable under the lodestar method (amounting to less than the lodestar amount actually incurred by counsel), even if one were to resort to the percent-of-the-fund alternative as a cross-check, that alternate method also supports the fee award being sought.

Lastly, as is common in settled class actions where the work and effort of the named individual plaintiff was instrumental in yielding the classwide settlement result, Villa and his counsel also seek approval of a $ 5,000 incentive award payable to Mr. Villa.  This amount is consistent with the incentive

3

awards approved by this and numerous other California federal courts in similar circumstances.   As detailed in the Katriel Declaration, Mr. Villa conferred and met with counsel, flew from his current home in Hawaii to attend a day-long deposition by the NFL's counsel in San Francisco, provided his NFL team-branded apparel for inspection by Defendants, and provided responses and documentation that were called for as part of discovery in the case.  *See* Katriel Decl., at ¶ 6.  His involvement and interest in the litigation proved invaluable to Class Counsel's efforts, and merits recognition by way of an incentive award.

For all the foregoing reasons, as is more fully detailed below, Villa and his counsel's motion for attorneys' fees, reimbursement of expenses, and approval of an incentive award should be granted.

## II.   THE CLASSWIDE SETTLEMENT ACHIEVED AFTER YEARS OF LITIGATION AGAINST OVER 30 NAMED DEFENDANTS.

This protracted, multi-year litigation against 33 named defendants has culminated in a classwide settlement that is indisputably fair and affords class members with significant monetary redress.  The Settlement Agreement defines and agrees to the certification of a Settlement Class broadly defined as persons who, during the Class Period, made purchases in California of caps, jerseys, or shoes bearing NFL-team branded intellectual property (i.e., an NFL team's logo or trademark).  *See* Settlement Agreement, at § 2.2 (defining Settlement Class).   The defendants have agreed to provide $ 4,750,000 in settlement consideration.  *Id.*, at § 3.1

To guard against the prospects of fraud or an unjustified windfall, the Settlement Agreement provides for limits on individual maximum recoveries per eligible transaction.  These maximum limits are not only reasonable, but likely exceed the actual damages that a prevailing plaintiff could have obtained after a full trial.  For example, for a class member who, like named plaintiff Villa or former named plaintiff Patrick Dang, present a proof of purchase as part of their claim, the Settlement Agreement sets a maximum recovery per purchase of a jersey, cap, or shoes post-trebling of up to the actual full purchase price of the item (or up to a third of the purchase price prior to trebling being applied to the claim).  *See* Settlement Agreement, at ¶ 4.1.6; ¶ 5.1  For those class members who do not present a proof of purchase, the Settlement Agreement sets a maximum per transaction pre-trebling recovery of $15.00 per eligible purchase of NFL-team branded jersey or shoes or $5.00 per eligible

purchase of NFL-team branded cap.  *Id.*, at ¶ 4.1.6.  And, of course, even these amounts to individuals who lack a proof of purchase are eligible to be trebled if the settlement fund has not been fully disbursed.  *Id.*, at ¶ 5.1.

Under the Settlement Agreement, the entire settlement consideration is non-reversionary, meaning that, regardless of the claims rate, no amount will revert back to Defendants. *Id.*, at ¶ 5.1  All settlement consideration will be used to benefit the Settlement Class through direct payments, payment of class notice costs and reimbursement of settlement administration expenses, reimbursement of attorneys' fees and costs as approved by the Court and, only if necessary to account for any consideration still remaining in the settlement fund, disbursement of any residual amounts left over to a Court-approved *cy pres* recipient.

But before such a contingent *cy pres* distribution is even contemplated, the Settlement Agreement ensures that if any balance remains in the Settlement Pay Fund once all claims have been submitted and initially processed, the fund shall be used towards the trebling of any reimbursement offered to individual claimants.   That is, the Settlement Agreement provides Class Members with the prospect of obtaining a trebled recovery if the Settlement Pay Fund is not fully exhausted after all eligible claims have been submitted.  This is the precise practice that federal courts across the country have held makes antitrust class action settlements inherently fair.  *See, e.g.*, *In re Pharmaceutical Industry Average Wholesales Price Litig.*, 588 F.3d 24, 35 (1st Cir. 2009) (district court's approval of *cy pres* distribution affirmed where court required that any undistributed funds first be used to treble settlement payments made to class members before any remaining funds were subject to *cy pres* disbursement: "The court ultimately insisted that the settlement pay class members treble damages before any money is distributed through cy pres."); *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423 (2nd Cir. 2007) (remanding for district court to consider on final approval of class action settlement whether undistributed funds should be used to treble class members claims first before being disbursed to *cy pres* recipient); *In re Publication Paper Antitrust Litig.*, 2009 WL 2351724, at *2 (D. Conn. Jul. 30, 2009) (not approving cy pres distribution of undistributed settlement funds until all class members' claims had been trebled).

While there is no *a priori* guarantee that the claimants will obtain a trebled recovery because the

Pltff's Motion for Attorneys' Fees

availability of that remedy will depend on the number of eligible claims filed relative to the settlement fund, the number of claims submitted to date lead to the reasonable projection that there will be no *cy pres* residual omponent because the number of claims submitted is such that claimants will exhaust the settlement fund while obtaining full redress and have that redress trebled or nearly trebled.  *See* Katriel Decl., at ¶ 2.  If this projection holds true by the time the settlement claims period closes, this would mean that eligible claimants with proofs of purchase, for example, will obtain a settlement payment equaling the full amount of their NFL apparel purchase, and not merely a payment for some relatively small percentage of their purchase amounting to the alleged overcharge (whose existence and extent the defendants dispute).  This is a remarkable and virtually unprecedented result, providing such class members with greater relief through settlement than they could possibly obtain even upon ultimate success at trial.

This outstanding and meaningful monetary settlement was the product of Class Counsel's efforts, investment of time and resources, for which they are now entitled to seek, and do seek an award of attorneys' fees and costs as set forth below.

## III.   VILLA'S COUNSEL ARE ENTITLED TO SEEK AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF COSTS.

### A.  The Fee Shifting Statutes, Settlement Agreement, And Rule 23(h) Provide For An Award Of Attorneys' Fees.

In granting Preliminary Approval to the classwide settlement, the Court certified a Settlement Class and appointed Villa's counsel as Class Counsel for settlement purposes.  *See* Dkt. No. 155, at ¶¶ 5.  Having represented the Settlement Class and secured a benefit for the class as a result of their representation of Mr. Villa in this litigation, and given the statutory fee shifting provision of the Cartwright Act, Class Counsel are now entitled to seek an award of attorneys' fees and reimbursement of expenses.  *See* Calif. Bus. and Prof. Code, § 16750(a) ("Any person who is injured in his or her business or property by reason of anything forbidden or declared unlawful by this chapter, may sue therefor. . . and to recover three times the damages sustained by him or her, interest on his or her actual damages pursuant to Section 16761 . . and shall be awarded a reasonable attorneys' fee together with the costs of the suit.").  The parties' Settlement Agreement, which the Court preliminarily approved, also

recognizes Class Counsel's right to seek an award of fees and costs. *See* Settlement Agreement, at § 12.2 (parties' agreement that "Subject to the limitation in Paragraph 12.1, Class Counsel may seek Court approval for payment from the Settlement Trust of the Settlement Administration Expenses, a Fee Award, and an Incentive Award, and Defendants will not object to, or otherwise challenge, directly or indirectly, such application."); *see also* Fed. R. Civ. P. 23(h) ("In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement.").

**B.     Calculation Of The Fee Award Due In This Cartwright Act Action, Must Be Made By Resort To State Law, Which Mandates The Use Of The "Lodestar" Methodology.**

The operative First Amended Complaint ("FAC") sought money damages on behalf of a California class of indirect purchasers of NFL team-branded apparel solely based on state law—the California Cartwright Act and California's Unfair Competition Law. *See* FAC [Dkt. No. 66], at Counts I-III.  The Court had subject-matter jurisdiction over these state law claims pursuant to diversity jurisdiction afforded under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d).   Although the last count of the FAC pled a separate claim only for injunctive relief on behalf of a separate putative nationwide class (*id.*, at Count IV), no such nationwide settlement class is the subject of the classwide Settlement Agreement and no injunctive relief is being provided as part of the settlement.  The entire settlement, therefore, binds only members of the California indirect purchaser settlement class.

Under these circumstances, where the asserted and settled counts are state law claims over which a federal court exercised diversity jurisdiction, any fee award must be calculated by resort to state law; here, California law.  And, California law is clear that the lodestar method (as opposed to the percent-of-the-fund method) is the proper means of calculating the attorney fee award.  Resort to the percent-of-the-fund method instead of the lodestar approach is abuse of discretion that results in reversible error, as the Ninth Circuit recently reiterated:

> The district court abused its discretion by computing fees using a percentage of recovery method rather than a lodestar method. Here, because the court exercised diversity jurisdiction over this matter, state law governs both the right to recover attorney's fees and the computation of their amount.

*Collado v. Toyota Motor Sales U.S.A., Inc.*, 550 Fed. Appx. 368, 369-70 (9th Cir. 2013).   The Ninth

Circuit's recent decision in *Collado* was not anomalous.  It relied on the Ninth Circuit's prior ruling in

*Mangold v. California Public Utilities Comm'n*, 67 F.3d 1470, 1479 (9th Cir. 1995), where the Ninth

Circuit first held that in state law cases brought in federal court, "we follow other circuits that apply

state law in calculating the fee."

     Merely a year after it decided *Collado*, the Ninth Circuit in another diversity case again reversed

as abuse of discretion a federal district court's resort to federal law methodologies and standards for

calculating an attorney fee award instead of the state law lodestar method:

> The district court abused its discretion in applying federal law instead of California
> substantive law to the calculation of attorney's fees. Because the district court exercised
> diversity jurisdiction over this case, California substantive law applies to the calculation
> of the attorney fee award.

*Gonzales v. Southern Wine & Spirits of America, Inc.*, 555 Fed. Appx. 704, 704 (9th Cir. 2014).

     *Collado* involved a request for attorneys' fees filed pursuant to both California Code of Civil

Procedure § 1021.5 (the California Private Attorney General statute) as well as the statutory fee shifting

provision of the California Consumer Legal Remedies Act.  Villa has not sought relief pursuant to

Section 1021.5, and instead relies on the express fee shifting statutory provision of the Cartwright Act

itself and the contractual provision for an award of attorneys' fees in the Settlement Agreement.  *See*

Calif. Bus and Prof. Code, §16750(a); Settlement Agreement, at § 12.2.  The California Court of

Appeal has made clear that, under California state law, calculation of an attorney fee award that is filed

pursuant to a state fee shifting statute (like the California Cartwright Act), as opposed to Section 1021.5

of the California Civil Code, is still to be made pursuant to the lodestar method unless the fee shifting

statute itself provides for a different fee calculation methodology to be employed:

> Defendants argue that it was not necessary for the trial court to apply the lodestar method
> in this case because that method is not applicable to an attorney's fee award under the
> IPA. 'The [California] Supreme Court has never held specifically that trial courts must
> use the lodestar adjustment method when calculating reasonable fees pursuant to a statute
> other than section 1021.5 [the private attorney general statute]. But *Serrano III* [*Serrano
> v. Priest, supra,* 20 Cal.3d 25, 141 Cal.Rptr. 315, 569 P.2d 1303] itself was not based on
> any statutory entitlement to fees; instead, it concerned a trial court's equitable power to
> award reasonable fees. Moreover, its adoption of the lodestar method of calculating
> reasonable fees was based on the premise that anchoring the analysis to the lodestar
> figure is the only way of approaching the problem that can claim objectivity, a claim

which is obviously vital to the prestige of the bar and the courts. Thus its pronouncements cannot be read as necessarily limited only to fees awarded under section 1021.5. (*Flannery v. California Highway Patrol* (1998) 61 Cal.App.4th 629, 640, 71 Cal.Rptr.2d 632, citations and quotation marks omitted.). ***We are persuaded by*** <u>***Flannery***</u> ***that the California Supreme Court intended its lodestar method to apply to a statutory*** **attorney's** ***fee award unless the statutory authorization for the award provided for another method of calculation. As no other method of calculation was provided for here, the trial court was required to utilize the lodestar method.***

*Meister v. The Regents of the Univ. of California*, 67 Cal. App.4th 437, 447 (1998) (emphasis added, internal footnote omitted); *see Frey v. Foxx*, 2007 WL 1041680, at *9 (Cal. App. Apr. 9, 2007) ("The trial court determines the amount of a statutory attorney fee award by the lodestar method, unless the statute provides for another method of calculation.") (citing *Meister*, 67 Cal. App. 4th at 447)).

The California Cartwright Act provides no other means of calculating a fee awarded pursuant to that statutes fee shifting statutory section.  Because Ninth Circuit precedent mandates that calculation of Villa's counsel's fee award in this diversity case brought under California's Cartwright Act be made by resort to California state law, and because California law calls for the fee determination to be made according to the lodestar method, we begin the following sections with, and focus our discussion on, counsel's lodestar submission.  That discussion demonstrates the reasonableness of the fee request. For the sake of completeness, however, in Section IV.B. *infra* we separately show that, even assuming *arguendo* that the percent-of-the-fund method had any application here, that method independently confirms counsel's entitlement to the fee award being sought.  Before detailing the fee request, however, we first document counsel's request for reimbursement of out-of-pocket costs and expenses, as that straightforward request is in order regardless of which method is used to analyze the fee request.

## IV.   <u>VILLA'S COUNSEL'S REQUEST FOR REIMBURSEMENT OF LITIGATION COSTS INCURRED SHOULD BE GRANTED.</u>

Before detailing counsel's request for attorneys' fees, we begin by documenting the straightforward request for reimbursement of out-of-pocket costs or expenses incurred by Villa's counsel in litigating this action.  The expenses incurred are significant—at total of $ 847,184.64. Though such an investment of capital was particularly onerous for the small law firms that litigated this action—a sole practitioner and a small plaintiffs' class action firm—Villa's counsel believed that such an investment of resources was necessary to zealously litigate this action for the benefit of the Class.

9

The California Cartwright Act provides for the recovery of such litigation expenses.  *See* Calif. Bus. and Prof. Code, § 16750(a) (providing prevailing plaintiff to "shall be awarded a reasonable attorneys' fee together with the costs of the suit.").  The Settlement Agreement likewise contemplates that such expenses would be sought as part of any fee award.  *See* Settlement Agreement, at §12.2 (agreeing that Class Counsel "may seek Court approval for payment from the Settlement Trust of the Settlement Administration Expenses, a Fee Award, and an Incentive Award."); *id.*, at § 1.22 (defining "Fee Award" as "any attorneys' fees and reimbursement of expenses (other than Settlement Administration Expenses) awarded by the Court to Class Counsel.").  Federal "Rule of Civil Procedure 23(h) authorizes a court to award fees and nontaxable costs that are authorized by law or by the parties' agreement." *Wren v. RGIS Inv. Spec.*, 2011 WL 1230826, at *29 (N.D. Cal. Apr. 1, 2011).

The $ 847,184.64 in expenses is comprised of $ 577, 915.33 in such expenses in incurred by the firm of Krause, Kalfayan, Benink & Slavens (*see* Kalfayan Decl., at ¶ 8), and another $ 269,269.31 incurred by The Katriel Law Firm. *See* Katriel Decl., at ¶ 3.  The accompanying Declarations detail the breakdown of these expenses, all of which are of the type incurred by attorneys litigating such actions and for which paying clients would be charged.  *See Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (explaining that expenses recoverable as part of a fee award are "those out-of-pocket expenses that would normally be charged to a fee paying client").

"An attorney seeking an expense award should file an itemized list of her expenses by category, listing the total amount advanced for each category, allowing the Court to assess whether the expenses are reasonable." *In re CRT Antitrust Litig.*, 2016 WL 183285, at *2 (N.D. Cal. Jan. 14, 2016).  The Kalfayan Declaration details the following expenses:

| **EXPENSE** | **AMOUNT** |
|---|---|
| Expert Witness – MMR Strategy Group | $121,817.58 |
| Expert Witness – Nathan Associates, Inc. | $416,517.77 |
| DTI and Concordance | $13,329.33 |
| Travel expenses | $7,203.47 |
| Federal Arbitration and Mediation | $14,751.14 |
| Court Reporters | $388.70 |

*Villa v. San Francisco Forty Niners, Ltd.,*
Case No.  12-cv-5481-EJD

Pltff's Motion for Attorneys' Fees

| Westlaw charges | $1,660.68 |
|---|---|
| Pacer charges | $9.40 |
| Postage charges | $101.86 |
| Knox Attorney Service | $20.97 |
| Meals | $150.00 |
| UPS/Fed Ex | $91.73 |
| Reproduction and copying costs | $1,872.70 |
| **TOTAL EXPENSES FOR KKBS LAW FIRM** | **$577,915.33** |

Similarly, the Katriel Declaration details the following incurred expenses:

| **EXPENSE** | **AMOUNT** |
|---|---|
| Nathan Associates (antitrust expert economist) | $40,000.00 |
| MMR Strategy Group (survey and marketing expert) | $58,733.79 |
| Esquire Solutions (deposition court reporters) | $6,018.00 |
| Fed Arb (mediator and mediation fees) | $5,015.52 |
| WESTLAW/LEXIS fees for case | $22,354.13 |
| Travel Expenses Re: Court Appearances, Depositions, and Mediation | $9,112.52 |
| PACER and Court Filing Fees | $1,894.18 |
| Dahl Administration (settlement claims administration) | $124,162.00 |
| FedEx, Courier, and Copying Costs | $1,979.17 |
| **TOTAL EXPENSES FOR THE KATRIEL LAW FIRM** | **$269,269.31** |

Both law firms incurred these out-of-pocket litigation expenses during the four year prosecution of this action, carrying these costs without any guarantee that they would ever be reimbursed for the same.  *See* Katriel Decl., at ¶ 3; Kalfayan Decl., at ¶ 3.  As part of the terms of the classwide settlement that Class Counsel successfully negotiated and secured and that the Court preliminarily approved, Class Counsel should now be reimbursed for these litigation expenses.

## V.   THE FEE REQUEST IS REASONABLE AND SHOULD BE APPROVED.

### A.  The Fee Requested Is Reasonable Under The Applicable Lodestar Approach.

To maximize the settlement benefits that would flow to the members of the Settlement Class, Class Counsel have agreed to limit their request for fees and expenses.  After accounting for the reimbursement of costs that Class Counsel has already incurred, the total attorney fee amount sought by Class Counsel for their work on this four year old case is $ 1,522,815.36.  This amounts to $ 169,425.50 less than the amount of billable work performed by counsel, resulting in a negative multiplier of .90 to the presumptive lodestar amount.

As was detailed in Section III.B. *supra*, calculation of the fee award in this action should proceed pursuant to the lodestar method.   The lodestar figure is calculated by multiplying the number of hours the moving party reasonably expended on the litigation by a reasonable hourly rate for the region and for the experience of the lawyer. *Staton v. Boeing Co.*, 327 F.3d 938, 965 (9th Cir. 2003).  Though the lodestar figure is "presumptively reasonable," *Cunningham v. Cnty. of Los Angeles,* 879 F.2d 481, 488 (9th Cir. 1988), the court may adjust it upward or downward by an appropriate positive or negative multiplier reflecting a host of reasonableness factors.  *Rose v. Bank of America, Corp.*, 2014 WL 4273358, at *6 (N.D. Cal. Aug. 29, 2014).

The lodestar itemization and breakdown for each of the two Class Counsel law firms is set forth in the accompanying Katriel and Kalfayan Declarations.  *See* Katriel Decl., at ¶ 4 and at Ex. 2 thereto; Kalfayan Decl., at ¶¶ 5-6 and at Ex. 2 thereto.  As set forth in those filings The Katriel Law Firm incurred a total lodestar of $997,090.50, comprised of 1,243.9 hours of partner attorney work by the main counsel responsible for litigating this action at an hourly rate of $795, as well as 42 hours of paralegal work billed at an hourly rate of $195.  *See* Katriel Decl., at ¶ 4, and at Ex. 2 thereto.  The law firm of Krause, Kalfayan, Benink & Slavens' lodestar is comprised of a total of 1,537.45 total billable hours, which includes the work of four attorneys over the four year course of the litigation, and a law clerk.  *See* Kalfayan Decl., at ¶¶ 5-6 and at Ex. 2 thereto. That firm's attorneys' hourly rates range from $250 for associate work to $600 for some of the work performed by Mr. Kalfayan, the principal of that law firm who, along with Mr. Katriel, was primarily responsible for conducting this litigation.  *Id.* Moreover, Mr. Kalfayan's time for the various tasks that he performed during the course of this

litigation was billed at a blended rate, with the uppermost hourly rate of $600 confined to only 21 hours of his billable time. *Id.* The remainder of the hours he devoted to this case have been billed at the lower hourly rates of $400 and $500. *Id.*

Thus, the total collective lodestar for Class Counsel amounts to $ 1,692,240.50. Nevertheless, to maximize the settlement benefits that will be made available directly to the eligible members of the Settlement Class (including a provision for trebling of their initial settlement amount), Class Counsel have agreed to reduce the actual amount of their fee request to $ 1,522,815.00 This represents a negative .90 lodestar multiplier, meaning that Class Counsel are foregoing recovery of approximately 10 percent of their billable work (and they also have not included a request for any future work that this settlement will likely require).

### 1. The Lodestar Hourly Billing Rates Are Reasonable.

To determine the appropriate lodestar amount, the reasonableness of the hourly billing rate must be assessed. *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008). To determine whether rates are reasonable, courts must identify the relevant community, and assess the prevailing hourly rate in that community for similar services by lawyers of reasonably comparable skill, experience, and reputation. *See Camacho*, 523 F.3d at 979. "Generally, when determining a reasonable hourly rate, the relevant community is the forum in which the district court sits." *Id.* To discharge their burden of showing the reasonableness of the hourly rates being charged, counsel may rely not only on their own declarations but "rate determinations in other cases, particularly those setting a rate for the attorneys, are satisfactory evidence of the prevailing market rate." *Guerrero v. California Dept. of Corrections and Rehabilitation*, 2016 WL 3360638, at *6 (N.D. Cal. Jun. 16, 2016).

Here, the hourly rates billed as part of counsel's lodestar is readily supported by this Court's own decisions recognizing similar and, indeed, significantly higher hourly rates as reasonable attorney hourly billing rates in this community[1]. Mr. Katriel's $795 hourly rate (the highest one within the lodestar

---

[1] The experience and qualifications of Class Counsel are summarized at paragraph 5 and Exhibit 1 to the Katriel Declaration, as well as at Exhibit 1 to the Kalfayan Declaration. Each counsel is experienced lawyer with 20 years or more in the legal practice, and each attorney has longstanding and particular expertise in plaintiffs' class action litigation, including numerous successful prosecutions of antitrust consumer class actions.

records), for example, is the exact same hourly rate that the Honorable Thelton E. Henderson approved last year in granting Mr. Katriel's request for a fee award in a product liability class action that this Court approved last year.  *See Seifi v. Mercedes-Benz USA, LLC*, No. 3:12-cv-5493-TEH (N.D. Cal. filed Jun. 12, 2015), at Dkt. No. 166-4, ¶ 9 (Declaration of Roy A. Katriel in support of motion for attorneys' fees setting forth his hourly rate of $795); *id.*, at Dkt. No. 208, at ¶ 9 (entered Aug. 18, 2015) (Order entered by Hon. Thelton Henderson granting Mr. Katriel's fee request and finding that "the attorney hourly billing rates documented in that Joint Declaration are reasonable and consistent with the hourly rates of similarly qualified and experienced attorneys in this district.").  No escalation of that rate, which was submitted and approved in 2015, is being sought as part of this request.

Last year, in another antitrust classwide settlement, the Honorable Lucy H. Koh, found that attorney hourly rates ranges encompassing much higher hourly rates than those being sought here were a reasonable reflection of the prevailing attorney hourly rates for antitrust class action work in the San Francisco Bay Area.  *See In re High-Tech Employee Antitrust Litig.*, 2015 WL 5158730, at *9 (N.D. Cal. Sept. 2, 2015) (documenting that the submitted lodestar attorney billing "rates for partners range from about $490 to $975" and holding that "the Court finds that these rates are reasonable in light of prevailing market rates in this district."); *see also Stonebrae, L.P. v. Toll Bros., Inc.*, 2011 WL 1334444, at *16 (N.D. Cal. Apr. 7, 2011) (approving  as reasonable hourly attorney partner rates " of $675 and $800, respectively, to all of their time billed to it."); *Davis v. Prison Health Servs.*, 2012 WL 4462520, at *9 (N.D. Cal. Sept. 25, 2012) (approving hourly rates of $675-750 for partner level attorneys and $300 for an attorney with 4 years of experience, and $265 for an attorney with 3 years of experience in 2012).

Much higher hourly rates have been met with unconditional approval by the Ninth Circuit in cases that pre-date this motion by several years.  *See Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 455 (9th Cir. 2010) (finding district court did not abuse its discretion in awarding 2008 hourly rates for Bay Area attorneys of up to $875 for a partner, $700 for an attorney with 23 years of experience, $425 for an attorney with approximately five years of experience, and $190 for paralegals).  These hourly rates are reasonable for top-level attorneys (and their staff) who have a nationwide practice—the very type of attorneys that Class Counsel faced in this action.  In a 2012 study examining billing rates at

more than 4,000 law firms, TyMetrix Inc. and Corporate Executive Board Co. found that in 2010 and 2011 partners in the top 25% of billers charged an average hourly rate of $873, up 4.9% from 2010. Jennifer Smith, *Biggest Lawyers Grab Fee Bounty*, Wall Street Journal, Apr. 15, 2011 http://www.wsj.com/articles/SB10001424052702304818404577346033823556086 (last visited Jul. 17, 2016);  *see Spicer v. Chicago Bd. Options Exchange, Inc.*, 844 F. Supp. 1226, 1248 (N.D. Ill. 1993) (finding class counsel's rates reasonable in light of corresponding rates charged by defense lawyers). For complex class action litigation similar to this case, the market rate for Plaintiffs' counsel's defense-firm counterparts can exceed $1,000/hour. *See id.* (finding that at Skadden, Arps, Slate, Meagher & Flom LLP, the top disclosed partner billing rate was $1,095, and the lowest disclosed partner rate was $790.00; *see also* Vanessa O'Connell, *Big Law's $1,000-Plus an Hour Club*, Wall Street Journal, Feb. 23, 2011 (http://www.wsj.com/articles/SB10001424052748704071304576160362028728234) (last visited Jul. 17, 2016) (finding that more than 120 lawyers for whom information was available had hourly rates exceeding $1,000 in the years 2010-2011) .  As evidenced by this Court's numerous decisions, the hourly billing rates submitted by Class Counsel's lodestar fee application are reasonable. The Court should therefore approve the requested rates, as it has done in prior cases.

### 2.   The Tasks Performed And Hours Spent Are Reasonable.

The tasks performed and hours spent performing them, as documented in the Katriel and Kalfayan Declarations, also "adequately reflect the amount of time reasonably spent on this litigation." *In re High-Tech Employee Antitrust Litig.*, 2015 WL 5158730, at *9.   These Declarations document that Class Counsel's law firms collectively devoted a total of 2,781.35 billable hours during the course of this litigation to date.  *See* Katriel Decl., at ¶ 4 and at Ex. 2 thereto; Kalfayan Decl., at ¶¶ 5-6, and at Ex. 2 thereto.  These figures do not include any work that remains to be done as part of the Final Approval of the Settlement, implementation of the settlement, or any appeal that may be filed from the approval of the settlement or fee award.  And, Class Counsel is seeking compensation for less than this amount, agreeing to a voluntary .90 negative multiplier so that the settlement benefits available to eligible class members can be enhanced.

By any objective measure, this case was thinly and efficiently staffed without any unnecessary duplication of efforts, being principally litigated by merely two partner-level attorneys (Messrs. Katriel

15

and Kalfayan).  That is particularly so when one considers that the NFL and Reebok Defendants were represented by three separate multinational law firms (i.e., the law firms of Covington & Burling for the NFL Defendants as well as the law firms of Latham & Watkins and Goodsmith, Gregg & Unruh for Defendant Reebok), and several partners and associates.  Further, the reference to 33 named defendants is not illusory.  Not only were each of the NFL teams, along with the NFL, NFLP, and Reebok separately named defendants, but each produced its own discovery.  For example, separate and distinct Interrogatories and Rule 34 Requests for Production of Documents were served on Reebok and the NFL Defendants.  The differences and complexities go further.  Even though the NFL Defendants collectively produced a core set of documents responsive to the discovery, each individual NFL Team separately produced its own responsive discovery documents that were different from, and in addition to, the discovery produced by the remaining NFL teams or Defendants.  *See* Katriel Decl., at ¶ 7.

Moreover, during the course of the litigation, Class Counsel determined and highlighted that there were differing positions and pertinent factual circumstances that were germane to some NFL team defendants but not others.  For example, Plaintiff's motion for partial summary judgment and the motion for class certification relied on the fact that the Dallas Cowboys (a named defendant in this action) had actually sued the NFL and remaining NFL teams alleging antitrust violations, and the allegations made in that antitrust action were of significance to Plaintiff's position in this proceeding.  *See generally* Dkt. No. 83 [Pltff's Mtn. For Partial Summ. Jdgmt.], at 21:3-22:2 (detailing import of prior antitrust lawsuit filed by Dallas Cowboys against NFL and remaining NFL teams).

The tasks required and performed here to advance the litigation and ultimately secure the favorable settlement were meaningful, complex, and called for significant investment of time and skill.  In addition to reviewing and analyzing the hundreds of thousands of pages produced by over 30 defendants as part of the discovery, the table below highlights just some of the principal events and tasks that Class Counsel undertook:

| NATURE OF TASK | RECORD REFERENCE |
|---|---|
| Research And Draft Class Action Complaint | Dkt. No. 1 |
| Review, Research, And Oppose Defendants' Motion To Dismiss Class Action Complaint | Dkt. Nos. 29, 34, 36, and 38 |

*Villa v. San Francisco Forty Niners, Ltd.,*                                    Pltff's Motion for Attorneys' Fees
Case No.  12-cv-5481-EJD

| Review, Research, And Oppose Defendants' Motion For Partial Judgment On The Pleadings | Dkt Nos. 47, 48, 51, 58, 60 |
|---|---|
| Orally Argue Against Defendants' Motion For Judgment On The Pleadings | Dkt. Nos.  73, 79 |
| Research and Draft First Amended Complaint | Dkt. No. 66 |
| Research And Draft Plaintiff's Motion For Partial Summary Judgment Or, In the Alternative, Summary Adjudication, Including Reply Brief In Support Thereof | Dkt. Nos. 83, 84, 85, 107, 108 |
| Orally Argue In Court Plaintiff's Motion For Partial Summary Judgment | Dkt. No. 131, 139 |
| Research And Draft Plaintiffs' Motion For Class Certification, Including Reply Brief In Support Thereof, And Dozens Of Exhibits in Support | Dkt. Nos.  88, 89, 90, 91, 127 |
| Orally Argue In Court Plaintiff's Motion For Class Certification | Dkt. No. 135 |
| Work On Expert Declaration Of Dr. Russell Mangum III, Ph.D. In Support Of Plaintiff's Motion For Class Certification | Attached as Exhibit to Dkt. No. 91 |
| Work On Expert Rebuttal Declaration Of Dr. Russell Mangum III, Ph.D. In Support Of Plaintiff's Motion For Class Certification | Attached as Exhibit to Dkt. No. 127-1 |
| Work On Expert Declaration Of Dr. Bruce Isaacson In Support Of Plaintiff's Motion For Class Certification, Including Overseeing Development And Adminsitration Of Consumer Survey | Attached as Exhibit to Dkt. No. 91 |
| Work On Expert Rebuttal Declaration Of Dr. Bruce Isaacson In Support Of Plaintiff's Motion For Class Certification | Attached as Exhibit Dkt. No. 91 |
| Depose Defendants' Expert Economist, Dr. Lauren Stiroh | Excerpts of deposition transcript attached as Exhibit to Dkt. No. 127-1 |
| Depose Defendants' Marketing Expert, Dr. Randolph Bucklin | Excerpts of deposition transcript attached as Exhibit to Dkt. No.127-1 |
| Defend Deposition Of Dr. Russell Mangum III, Plaintiff's Expert Antitrust Economist | Excerpts of deposition transcript attached as Dkt. No. 117 |
| Defendant Deposition Of Dr. Bruce Isaacson, Plaintiff's Marketing And Survey Expert | Excerpts of deposition transcript attached as Dkt. No.117 |
| Prepare And Defendant Deposition Of Plaintiff Michael Villa | Excerpts of deposition transcript attached as Dkt. Nos. 117, 127-1 |

| | |
|---|---|
| Prepare Declaration of Plaintiff Michael Villa In Support Of Class Certification Motion | Dkt. No. 89 |
| Prepare Declaration Of Michael Villa In Support Of Plaintiff's Motion For Partial Summary Judgment | Dkt. No. 84 |
| Review And Analyze Hundreds Of Thousands Of Document Pages Produced In Discovery | Discovery during case |
| Draft And Propound First Set Of Document Requests On NFL Defendants | Discovery propounded during case |
| Draft And Propound First Set Of Interrogatories On Defendant Reebok | Discovery propounded during case |
| Draft And Propound Second Set Of Document Requests On NFL Defendants | Discovery propounded during case |
| Draft And Propound First Set Of Document Requests On Defendant Reebok | Discovery propounded during case |
| Draft And Propound Second Set Of Document Requests On Defendant Reebok | Discovery propounded during case |
| Review And Analyze Dozens Of Deposition Transcripts Taken In Parallel American *Needle v. NFL* Competitor Action For Use As Exhibits In This Case | American Needle litigation record produced and reviewed in its entirety as part of this litigation |
| Draft Mediation Brief, And Attend Mediation Before Hon. Howard A. Matz (Ret.) In New York | Mediation submission.  See Dkt. Nos. 46, 57. |
| Draft Plaintiff's Motion For Preliminary Approval Of Classwide Settlement | Dkt. Nos. 151, 152, and 153. |
| Orally Argue In Court In Support Of Plaintiff's Motion For Preliminary Approval | Dkt. Nos. 154, 155 |
| Draft Plaintiff's Motion For Award Of Attorneys' Fees, Costs, And Incentive Award | Dkt. No.  159 |

The nature of the case, including the complexity of the allegations and the number of well-heeled defendants, confirms the reasonableness of the work and hours expended by Class Counsel throughout the four-year course of the litigation.  By way of reference, for example, the 2,781.35 hours of attorney work performed in this antitrust class action is a mere fraction of the legal work billed for and approved as reasonable by this Court in *In re High-Tech. Employee Antitrust Litig.*, though that antitrust case lasted a comparable amount of time as this one, and required proof of similar elements of antitrust law:

*Villa v. San Francisco Forty Niners, Ltd.,*
Case No.  12-cv-5481-EJD

Pltff's Motion for Attorneys' Fees

Furthermore, the Court finds that 36,215 hours is a reasonable amount of time for Class Counsel to have spent on this litigation. In the more than four years that this case has been pending, Class Counsel (1) identified the alleged conspiracy to fix and suppress employee compensation in the tech industry; (2) met with their clients and secured retainer agreements; (3) prepared and filed multiple complaints against Defendants; (4) survived two motions to dismiss; (5) undertook considerable discovery, including taking 93 depositions and defending 14 others, serving 75 document requests, reviewing the resulting 325,000 documents (over 3.2 million pages), serving 28 subpoenas on third parties, reviewing 8,809 pages of documents from those third parties, producing over 31,000 pages of documents in response to Defendants' document requests, and responding to and reviewing 34 subpoenas served by Defendants on third parties; (6) retained four experts to assist in analyzing over 15 gigabytes of employment-related compensation and recruiting data; (7) worked with the experts to produce multiple expert reports; (8) filed a consolidated class action complaint; (9) litigated two rounds of class certification; (10) opposed a Rule 23(f) appeal to the Ninth Circuit; (11) survived five summary judgment motions; (12) prepared for trial; (13) negotiated three settlements; and (14) opposed mandamus in the Ninth Circuit.

*In re High-Tech Employee Antitrust Litig.*, 2015 WL 5158730, at *10.

Although, of course, not all aspects of the legal work performed in *In re High-Tech Employee Antitrust Litig.* were of an identical extent as the tasks performed in this antitrust class action (some were greater while others were less), that this case was litigated by billing for only a fraction of the attorney hours billed in *In re High-Tech Employee Antitrust Litig.* confirms the reasonableness of the lodestar range being documented by Class Counsel here.   It is also noteworthy that while Class Counsel filed the first and only class action challenging the NFL-Reebok agreement, the *In re High-Tech Employee Antitrust Litig.* class case was brought only after the United States Department of Justice already had performed its investigation and publicly filed its own complaint against the *In re High Tech* defendants. *See In re High Tech Employee Antitrust Litig.*, 2015 WL 5158730, at *1 (detailing that "[f]rom 2009 to 2010, the U.S. Department of Justice's ("DOJ") Antitrust Division investigated the employment and recruitment practices of various Silicon Valley technology companies, including Defendants. . . . DOJ filed its complaint against Defendants on September 24, 2010 [a full eight months before the first class action was filed]").

Ultimately, in adjudicating a fee award request, whether one employs a lodestar approach, the percent-of-the-fund method, or some other means, "[r]easonableness is the goal." *Fischel v. Equitable Life Assurance Society of U.S.*, 307 F.3d 997, 1007 (9th Cir. 2002).  Here, it cannot plausibly or objectively be said that the amount of attorneys' fees sought for a four-year litigation against more than

19

30 NFL teams and entities and Reebok, a multinational, multi-billion apparel manufacturer, that depended on proving legal claims that had never been subject to any other consumer class action, is unreasonable.   To the contrary, because by any objective measure, Class Counsel's fee request is inherently fair and reasonable, it should be approved.

### 3. Although Class Counsel Do Not Affirmatively Seek a Lodestar Enhancement Multiplier, They Are Entitled To One.

As referenced in Section V.A. *supra*, the product of reasonable hours worked times the hourly rates billed for that work yields the initial presumptive lodestar.  That initial amount, however, is subject to adjustment based on a host of reasonableness factors, such that courts often award an enhanced lodestar multiplier as part of a fee award.  Here, although the facts support such an enhanced lodestar multiplier, Class Counsel do not seek an enhanced lodestar multiplier in the first instance.  To the contrary, in order to maximize the portion of the settlement consideration that is to be distributed to the eligible class members, Class Counsel has agreed to forego part of their earned fee and to seek a lodestar award reflecting only a portion of their billable work.

Despite this, we briefly set forth the factors that would support an enhanced lodestar multiplier here under governing law.  We do so in the event that for some unforeseen reason an objector were to argue that either the hours billed or the rates submitted as part of Class Counsel's lodestar application somehow were not fully cognizable.   That is, even if the initial lodestar amount calculated by Class Counsel were somehow subject to attack (and it assuredly should not be), Class Counsel would still be entitled to a lodestar multiplier that would justify the fee award being sought.

For starters, it is noteworthy that determination whether to award a lodestar multiplier in this case is a decision governed by California state law, as opposed to federal law.  *See Mangold*, 67 F.3d at 1478-79.  As this Court has explained, this distinction is significant, given the differing standards for such lodestar multiplier awards between federal and California law:

> Under both federal and California state law, the amount of a reasonable fee award is determined by multiplying the number of hours reasonably expended in the litigation by a reasonable hourly rate. *However, federal and state law governing attorneys' fees differ in one significant respect: Under federal law, there is a 'strong presumption' that this 'lodestar' figure constitutes a reasonable fee award because most relevant considerations are subsumed into this initial calculation, and adjustment to the lodestar will only be appropriate in 'rare' or 'exceptional' cases. Under state law, on*

20

*the other hand, the lodestar may be adjusted based on such factors as the contingent nature of the fee award and the novelty and difficulty of the questions involved*.

*Coles v. City of Oakland*, 2007 WL 39304, at *4 (N.D. Cal. Jan. 4, 2007) (emphasis added, internal citations omitted).

As the Central District of California has succinctly put it, "[u]nlike federal law, California still allows contingency multipliers." *Loera v. County of Los Angeles*, 2005 WL 1225982, at *2 (C.D. Cal. Mar. 21, 2005). This Court has further explained that:

> Thus, unlike federal law, California law allows contingency multipliers. To determine the propriety of applying a multiplier, the court must consider several factors, including the novelty or difficulty of the questions involved; the expertise and capability of counsel; the results obtained; the contingent risk involved in the case; the extent to which the nature of the litigation precluded other employment by the attorneys; and whether the attorneys received public and/or charitable funding.

*Mannick v. Kaiser Foundation Health Plan, Inc.*, 2007 WL 2892647, at *7 (N.D. Cal. Sept. 28, 2007) (citing *Serrano v. Priest*, 20 Cal.3d 25, 48-49 (1977)).

The California Supreme Court has explained that far from being presumptively unavailable or reserved for an anomalous case, under California law, such contingency multipliers are to be awarded in appropriate cases as follows:

> As discussed, the purpose of a fee enhancement is primarily to compensate the attorney for the prevailing party at a rate reflecting the risk of nonpayment in contingency cases as a class. To the extent a trial court is concerned that a particular award is excessive, it has broad discretion to adjust the fee downward or deny an unreasonable fee altogether.
>
> Nor is it true that applying a fee enhancement will inevitably result in unfair double counting or a windfall to attorneys representing SLAPP defendants. Under our precedents, the unadorned lodestar reflects the general local hourly rate for a *fee-bearing case;* it does *not* include any compensation for contingent risk, extraordinary skill, or any other factors a trial court may consider under *Serrano III.* The adjustment to the lodestar figure, e.g., to provide a fee enhancement reflecting the risk that the attorney will not receive payment if the suit does not succeed, constitutes earned compensation; unlike a windfall, it is neither unexpected nor fortuitous. Rather, it is intended to approximate market-level compensation for such services, which typically includes a premium for the risk of nonpayment or delay in payment of attorney fees.

*Ketchum v. Moses*, 24 Cal.4th 1122, 1138 (2001) (italics in original).

Here, the pertinent factors would all support a contingency fee multiplier awarded under California law. Class Counsel undertook representation in this case solely on a contingent-fee basis,

such that for the four years in which this case has been pending, counsel has not been paid and has

never had any guarantee of receiving any compensation. *See* Katriel Decl., at ¶ 3; Kalfayan Decl., at ¶3.

Further adding to this uncertainty and the risk of not receiving any payment is the zealousness of

Defendants in litigating this matter to its full extent.  In the parallel *American Needle* competitor action

for example, defendants litigated this matter all the way to the United States Supreme Court and

following that mandate, continued litigating before the district court upon remand from the Supreme

Court. *See American Needle v. National Football League*, 560 U.S. 183 (2010) (litigating competitor

action before Supreme Court); *American Needle v. New Orleans Louisiana Saints*, 2014 WL 1364022

(N.D. Ill. Apr. 7, 2014) (continuing litigation years after remand from Supreme Court).  The significant

hours of work devoted to this non-paying case, moreover, represented time that counsel could not

devote to paying matters that Class Counsel had to forebear from undertaking.  *See* Katriel Decl., at ¶ 4.

The significant amount of out-of-pocket expenses incurred relative to the lodestar amount billed speaks

to the complexity of the legal issues presented and the real risk undertaken in accepting this matter on a

contingent fee basis.

      Noted antitrust jurist and Chief Judge of the United States Court of Appeals for the Seventh

Circuit, the Honorable Richard Posner, has resoundingly called for courts to liberally grant lodestar

contingency multipliers in antitrust cases in particular.  As Judge Posner reasoned:

> The award of substantial attorney's fees to the lawyers for the plaintiffs in a successful
> antitrust class action is important in order to encourage the bringing of such actions.
> Necessarily, these lawsuits are handled on a contingent-fee basis, and the uncertainty of
> antitrust law and the complexity of the facts in most antitrust cases create a substantial
> risk that the lawsuit will fail and the lawyers for the class therefore receive no fee.
> Because these are big cases, the investment of the attorney's time and effort-an
> investment that he loses entirely if the suit is unsuccessful-is very large; and payment of
> his fee may be long postponed due to the length of the typical antitrust case. In addition,
> the successful prosecution of an antitrust case requires highly specialized legal skills and
> aptitudes that are in great demand by conventional clients. Substantial fees are necessary
> if the lawyers having these skills are to be induced to devote their attention to the
> plaintiffs' side in antitrust class actions, rather than to the more secure forms of practice
> for which their skills equip them.

Decl. of Richard Posner (then Profess of Law), quoted in *Phemister v. Harcourt Brace Jovanovich,*

*Inc.*, 1984 WL 21981, at *19 (N.D. Ill. Sept. 14, 1984).

      To reiterate, Class Counsel is not even seeking any contingency lodestar multiplier or

enhancement in the first instance.  To the contrary, Class Counsel are voluntarily *reducing* their lodestar fee request so as to maximize the settlement consideration made available to the members of the Settlement Class.  But, in the unlikely event that the Court were faced with an objection to the lodestar amount presented by Class Counsel, the availability of a lodestar multiplier, which Class Counsel have refrained from affirmatively seeking, would moot any such objection.

Because the governing lodestar method for calculating Class Counsel's fee award amply supports the fee amount being sought, Class Counsel's request should be granted.

**B. Although Not The Standard Governing This Fee Motion, The Percent-Of-The-Fund Method Provides A Cross-Check That Confirms The Reasonableness Of The Fee Request.**

As set forth in Section III.B *supra*, the legal standard governing Class Counsel's fee motion in this case is the lodestar method as opposed to the alternative percent-of-the-fund approach. Nevertheless, though inapplicable, the percent-of-the-fund result can still be consulted as a means of "cross-checking" the reasonableness of the fee award arrived at by resort to the lodestar method.  *See Staton*, 327 F.3d at 973-74 (endorsing use of percent-of-fund calculation as cross-check of lodestar result and vice-versa).

Here, the $ 1,522,815.36 fee award sought by Class Counsel amounts to 32 percent of $4,750,000 settlement fund amount.   While the so-called "benchmark" percent-of-the-fund award sometimes referenced by the Ninth Circuit is 25 percent, the Ninth Circuit and this Court have repeatedly cautioned that this is a mere "starting point" from which an upward departure of the magnitude involved here is often justified and reasonable, particularly in complex antitrust cases such as this one.  *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002) ("The 25% benchmark rate, although a starting point for analysis, may be inappropriate in some cases. Selection of the benchmark or any other rate must be supported by findings that take into account all of the circumstances of the case."); *See Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990) (citing 3 Newberg on Class Actions, § 14.03 for the proposition that "20–30 percent is usual common fund award.").  Following that directive, numerous Ninth Circuit decisions as well as orders from  California federal courts have approved a percent-of-the-fund fee award identical to or higher than the 32 percent mark applicable here.  *See, e.g., Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454,

23

463 (9th Cir. 2000) (affirming a 33.33 percent of the fund fee award); *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (affirming a 33 percent of the fund fee award); *Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 431,450 (E.D. Cal. 2013) ("33 percent of the total settlement amount, is fair and reasonable in light of the awards of attorneys' fees in similar wage-and-hour cases in this district" and collecting California federal cases awarding 33 percent of fund fee motions).

Here, Class Counsel are not seeking a percent-of-the-fund award.  Their fee award is premised on their lodestar submission, and as this memorandum makes clear, it is the lodestar approach that governs their fee petition as a matter of law.  The percent-of-the-fund is merely being proffered as a "cross-check" to confirm that the lodestar calculation falls within the reasonable range.  Given that, it is especially pertinent that the result obtained by percent-of-the-fund cross-check need not be identical to the lodestar amount in order for the fee award to be considered reasonable.  *See In re HP Inkjet Printer Litig.,*716 F.3d 1173, 1190 (9th Cir.2013) (it is not necessary for the fee award to be equally justifiable under both the lodestar and the percentage methods, or for the percentage method to be precise when used as a cross-check) (cited in *In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 591 (N.D. Cal. 2015) (Davila, J.)).

Because application of a percent-of-the-fund cross-check confirms the reasonableness of Class Counsel's lodestar request, the fee motion should be granted.

## VI.     THE INCENTIVE AWARD REQUESTED IS REASONABLE, AND SHOULD BE APPROVED.

A payment of an incentive award to class representatives is permissible and often awarded as compensation for an individual undertaking the risk and expending time in working with plaintiffs' counsel to advance Class Members' interests.  *See Rodriguez v. West Pub. Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009).  Courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks incurred during the litigation. *See Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 490 (E.D. Cal. 2010).

Villa and his counsel seek approval of a $ 5,000 incentive award payable to Mr. Villa.  As detailed in the Katriel Declaration, Mr. Villa conferred and met with counsel, flew from his current home in Hawaii to attend a day-long deposition by the NFL's counsel in San Francisco, provided his

24

NFL team-branded apparel for inspection by Defendants, and provided responses and documentation that were called for as part of discovery in the case. *See* Katriel Decl., at ¶ 6.   His involvement and interest in the litigation proved invaluable to Class Counsel's efforts, and merits recognition by way of an incentive award.

The $5,000 incentive award requested is in line with, or actually less than, incentive awards approved by this Court. *See Bellinghausen v. Tractor Supply Co.*, 2015 WL 1289342, at *17 (N.D. Cal. Mar. 20, 2015) (awarding named class plaintiff $15,000 incentive award "in light of the time and effort Plaintiff expended for the benefit of the class."); *Navarro v. Servisair*, 2010 WL 1729538, at *4 (N.D. Cal. Apr. 27, 2010) ("Based on this active participation, an incentive award of $10,000.00 is reasonable.").   As Judge Davila has explained in another consumer class action settlement that called for this same incentive award amount:

> The Settlement Agreement provides that the named Plaintiffs may receive incentive awards of up to $5,000 each. In this district, that amount is presumptively reasonable. *Jacobs v. Cal. State Auto. Ass'n Inter–Ins. Bureau,* No. C 07–00362 MHP, 2009 U.S. Dist. LEXIS 101586, at *13–14, 2009 WL 3562871, at *4–5 (N.D. Cal. Oct. 27, 2009). Since the named plaintiffs assumed the responsibilities and burdens of acting as representatives in this lawsuit, including providing documents, verifying allegations, and consulting with counsel, the court finds the incentive awards reasonable in light of the eligibility factors set forth in *Staton*.

*In re Google Referrer Header Privacy Litig.*, 87 F. Supp.3d 1122, 1137 (N.D. Cal. 2015) (Davila, J.,).

Given Mr. Villa's meaningful contribution to, and assumption of responsibilities during, the course of this litigation, and the presumptive reasonableness of his incentive award request, his motion for approval of a $5,000 incentive award should be granted.

## <u>CONCLUSION</u>

For all the foregoing reasons, Plaintiff and Class Counsel's Motion For An Award Of Attorneys' Fees, Reimbursement Of Costs, and Approval Of Incentive Award should be GRANTED.

*Villa v. San Francisco Forty Niners, Ltd.,*
Case No.  12-cv-5481-EJD

Pltff's Motion for Attorneys' Fees

Dated: July 18, 2016                    Respectfully submitted,

                                        _____/s/ Roy A. Katriel_____
                                        Roy A. Katriel (SBN 265463)
                                        **THE KATRIEL LAW FIRM, P.C.**
                                        4225 Executive Square, Suite 600
                                        La Jolla, CA 92037
                                        Telephone: (858) 242-5642
                                        Facsimile:   (858) 430-3719

                                        Ralph B. Kalfayan (133464)
                                        **KRAUSE, KALFAYAN BENINK & SLAVENS, LLP**
                                        550 West C Street, Suite 530
                                        San Diego, CA 92101
                                        Telephone: (619) 232-0331
                                        Facsimile: (619) 232-4019
                                        E-mail:rkalfayan@kkbs-law.com

                                        *Class Counsel*

*Villa v. San Francisco Forty Niners, Ltd.,*                    Pltff's Motion for Attorneys' Fees
Case No.  12-cv-5481-EJD