1
2
3
4

Roy A. Katriel (SBN 265463)
**THE KATRIEL LAW FIRM, P.C.**
4225 Executive Square, Suite 600
La Jolla, California 92037
Telephone: (858) 242-5642
Facsimile:  (858) 430-3719
E-mail: rak@katriellaw.com

5
6
7
8
9

Ralph B. Kalfayan (SBN 133464)
**KRAUSE, KALFAYAN, BENINK & SLAVENS, LLP**
550 West C Street, Suite 530
San Diego, California 92101
Telephone: (619) 232-0331
Facsimile:  (619) 232-4019
E-mail: rkalfayan@kkbs-law.com

10

*Class Counsel*

11

12

# UNITED STATES DISTRICT COURT

13

## NORTHERN DISTRICT OF CALIFORNIA

14

### SAN JOSE DIVISION

15

16
17

MICHAEL VILLA, On Behalf Of Himself And
All Others Similarly Situated,

18

                        Plaintiff,

19

        vs.

20

SAN FRANCISCO FORTY NINERS LTD., et
al.

21

22

                Defendants.

16 | **CASE NO.  5:12-cv-5481-EJD**

18 | **PLAINTIFF CLASS REPRESENTATIVE MICHAEL VILLA'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

20 | **Judge: Hon. Edward J. Davila**
**Hearing Date: November 17, 2016**
**Hearing Time: 9:00 am**
**Location: Courtroom 4**

23

24

25

26

27

28

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION……………………..………………………………………1

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION
FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT………………....…………1

INTRODUCTION……………………………………………………………..…………………1

Summary Of The Litigation……………………………………………….…………….2

Summary Of Settlement Terms…………………………………………………5

The Lack Of Even A Single Objection Strongly Counsels In Favor
Of The Settlement's Fairness……………………………………………………9

The Lack Of Any Requests For Exclusion Confirms The Class'
Endorsement Of The Settlement…………………………………………………10

ARGUMENT………………………………………………………….……………………10

I.      FINAL APPROVAL SHOULD BE GRANTED………………………………..10

        A.      Applying The Legal Standard To The Facts Of This Case
                And This Settlement Counsel In Favor Of Final Approval………………………10

        B.      The Settlement Is Presumptively Fair………………………………….……11

        C.      The Settlement Satisfies The *Hanlon* Approval Standards………………………12

                1.      Arms' Length Negotiations…..………………………………………..12

                2.      The Settlement Is Outstanding In Light Of The
                        Risks Of Continuing Litigation…………………………………………..12

                3.      The Risk Of Obtaining And Maintaining Class
                        Action Status Throughout The Trial Militates
                        In Favor Of Final Approval…………………….……………………..…14

                4.      The Amount Offered In Settlement Supports
                        Final Approval……………………………….……………………..…15

                5.      The Discovery Completed And Stage Of The
                        Proceedings Support Final Approval ……….……………………...………16

                6.      The Experience And Views Of Counsel……………………………….……17

                7.      The Reaction Of The Class Members To The
                        Proposed Settlement Also Supports Final Approval………………….……17

II.     THE SETTLEMENT TRUST AND TRUSTEE SHOULD BE APPROVED…….…..…18

CONCLUSION………………………………………………………………………19

1

# <u>TABLE OF AUTHORITIES</u>

2

**Cases:**

3

4
*American Needle, Inc. v. National Football League*,
560 U.S. 183 (2010)……………………………………………………………………13

5
*American Needle, Inc. v. New Orleans Louisiana Saints*,
2012 WL 4327395 (N.D. Ill. Aug. 17, 2012)…………………………...……………13

6

7
*Behrens v. Wometco Enterprises, Inc.*,
118 F.R.D. 534 (S.D. Fla. 1988), aff'd 899 F.2d 21 (11th Cir. 1990)……………………8-9

8

9
*Boyd v. Bechtel Corp.*,
485 F. Supp. 610 (N.D. Cal. 1979)……………………………………..………………11

10

11
*Cagan v. Anchor Sav. Bank FSB*,
1990 WL 73423 (E.D.N.Y May 22, 1990)………………………………………………8

12
*Class Plaintiffs v. Seattle*,
955 F.2d 1268 (9th Cir. 1992)……………………………………….……...………11, 12

13

14
*Ellis v. Naval Air Rework Facility*,
87 F.R.D. 15 (N.D. Cal. 1980), aff'd, 661 F.2d 939 (9th Cir. 1981)………………...….………12

15

16
*Erie Forge and Steel, Inc. v. Cyprus Minerals Co.*,
1994 WL 485803 (W.D, Pa. Dec. 23, 1996)……………………………………………8

17
*Hanlon v. Chrysler Corp.*,
150 F.3d 1101 (9th Cir. 1998)……………………………………..………………11, 12

18

19
*HCL Partners Ltd. Partnership v. Leap Wireless Int'l, Inc.*,
2010 WL 4027632 (S.D. Cal. Oct. 14, 2010)……………………….…………...10, 18

20

21
*In re Domestic Air Transp. Antitrust Litig.*,
148 F.R.D. 297 (N.D. Ga. 1993)……………………………………..………..8

22

23
*In re Four Seasons Sec. Litig.*,
58 F.R.D. 19 (W.D. Okla. 1972)………………………………………………...8

24
*In re Google Referrer Header Privacy Litig.*,
87 F. Supp.3d 1122 (N.D. Cal. 2015)…………………………..………………16

25

26
*In re Mego Financial Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir. 2000)………………………….…………...8, 10-11, 13

27
*In re Omnivision Techs., Inc.*,
559 F. Supp.2d 1036 (N.D. Cal. 2008)…………………………………..……………1

28

*In re Online DVD-Rental Antitrust Litig.*,
779 F.3d 934 (9th Cir. 2015)………………………………………………………………11

*In re Pharmaceutical Industry Average Wholesale Price Litig.*,
588 F.3d 24 (1st Cir. 2009)……………………………………………..……………6, 15

*In re Publication Paper Antitrust Litig.*,
2009 WL 2351724 (D. Conn. Jul. 30, 2009)………………………………..…………6, 16

*Kirkorian v. Borelli*,
695 F. Supp. 446 (N.D. Cal. 1988)…..……………………………………………………11

*Lazy Oil Co. v. Wotco Co.*,
95 F. Supp.2d 290 (W.D. Pa. 1997)………………..……………………………………….8

*Linney v. Cellular Alaska Partnership*,
151 F.3d 1234 (9th Cir. 1998)………………………………………………………..…13

*M. Berenson Co. v. Faneuil Hall Marketplace, Inc.*,
671 F. Supp. 819 (D. Mass. 1987)………………………………………………………..11

*Marshall v. Holiday Magic, Inc.*,
550 F.2d 1173 (9th Cir. 1977)……………………………………………....………..9, 10

*Masters v. Wilhelmina Model Agency, Inc.*,
473 F.3d (2nd Cir. 2007)………………………………………………….……..6, 15

*McPhail v. First Command Financial Planning, Inc.*,
2009 WL 839841 (S.D.  Cal. Mar. 30, 2009)………………………………………………8

*National Rural Telecommunications Coop. v. DirecTV, Inc.*,
221 F.R.D. 523 (C.D. Cal. 2004)…………………………………………………………10

*Officers for Justice v. Civil Service Commission*,
688 F.2d 615 (9th Cir. 1982)……………………………………..…………10, 11, 12, 14

*Partee v. San Diego Chargers Football Co.*,
34 Cal.3d 378 (1983)…………………………………………………………….…..…3

*Roberti v. OSI Sys., Inc.*,
2015 WL 8329916 (C.D. Cal. Dec. 8, 2015)………………………………..…………9, 17

*Rodriguez v. West Publishing*,
563 F.3d 948 (9th Cir. 2009)……………………………………………………....…..17

*Shames v. Hertz Corp.*,
2012 WL 5392159 (S.D. Cal. Nov. 5, 2012)………………………………………………8

Case No. 12-CV-05481-EJD

1

*Van Bronkhorst v. Safeco Corp.*,
529 F.2d 943 (9th Cir. 1976)……………………………………………..…………………11

2

*Vasquez v USM Inc.*,
2016 WL 612906 (N.D. Cal. Feb. 16, 2016)…………………………………...…………17

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NOTICE OF MOTION AND MOTION**

To Defendants, their counsel of record, and any other interested parties:

PLEASE TAKE NOTICE THAT on November 17, 2016 at 9:00 a.m., at Courtroom 4 of the United States District Court for the Northern District of California, 280 South First Street, in San Jose, California, or at such other time or place as this Court may Order, Plaintiff and Class Representative Michael Villa ("Plaintiff" or "Villa"), by and through his undersigned counsel, will and does hereby move this Court for an Order granting Final Approval to the classwide proposed settlement reached in this matter.  This motion is based on the accompanying Memorandum in Support, Declaration of Roy A. Katriel, Declaration of Jeffrey D. Dahl, any argument of counsel, and such additional material as this Court may consider.

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

**INTRODUCTION**

On April 21, 2016, this Court entered an Order: (a) granting preliminary approval to the proposed settlement of this action; (b) certifying the Class for purposes of settlement; (c) approving the parties' proposed form and method for giving notice of the pendency of the action and the settlement to the Class; (d) directing that notice be given to Class members as approved by the Court; and (e) scheduling a hearing at which the Court will consider the parties' request for final approval of the settlement and entry of the proposed Final Order and Judgment along with plaintiffs' application for an award of attorneys' fees and reimbursement of expenses (the "Preliminary Approval Order"). *See* Dkt. No. 155.  Plaintiff now submits this memorandum in support of his unopposed motion for final approval of the class action settlement.  The motion is unopposed not only in the sense that final approval is unopposed by all the named and settling defendants, ***but notably no absent class member has sought to opt-out from the Settlement Class and no objections to the settlement have been filed***.  "By any standard, the lack of objection of the Class Members favors approval of the Settlement." *In re Omnivision Techs., Inc.,* 559 F.Supp.2d 1036, 1043 (N.D.Cal.2008) (citations omitted)).  At the same

time, class members have availed themselves of the proposed settlement's reimbursement benefits with vigor—filing settlement claims involving over 80,000 qualifying NFL apparel items.

Per the Court's Order, Villa and his counsel filed a separate motion in support of their request for attorneys' fees, reimbursement of costs, and approval of an incentive award.  *See* Dkt. No. 159.  The proposed settlement is memorialized in the Settlement Agreement previously filed with the Court as part of Plaintiffs' Motion for an Order Preliminarily Approving Settlement [Dkt. No. 151-2].  All capitalized terms not otherwise defined herein are defined in that Settlement Agreement.

The proposed Settlement should be approved as it is an excellent result in this case, one in which the thirty-two (32) named defendants zealously opposed each of the Plaintiff's claims for relief and his plea for class certification at every turn.  *See* Dkt. Nos. 29 (Defendants' motion to dismiss Class Action Complaint); Dkt. No. 51 (Defendants' motion for partial judgment on the pleadings); and Dkt. No. 117 (Defendants' opposition to Plaintiff's motion for class certification).  The Settlement resolves claims of all eligible Settlement Class members, affording meaningful monetary compensation to both those eligible Settlement Class members who have a proof of purchase as well as those who do not.  Moreover, any balance remaining in the Settlement Fund is used to increase the reimbursement afforded to qualifying Settlement Class members until either the amount is trebled, the Settlement Fund is exhausted, or the maximum per claimant cap is reached.  By any measure, the Settlement is fair, reasonable, and worthy of final approval.

## Summary Of The Litigation

On October 24, 2012, then-named plaintiff and putative class representative Patrick Dang filed a Class Action Complaint ("CAC") in this action against thirty-one NFL Defendants and Reebok International Ltd.  *See generally* Dkt. No. 1 (original Class Action Complaint).  That pleading alleged that an agreement entered into among the named rival NFL teams by which the teams allegedly agreed to collectively license the rights to their respective team marks for use in apparel only through named Defendant NFL Properties ("NFLP") was an unlawful horizontal agreement in restraint of trade that violated California's Cartwright Act.  *Id.*, at ¶¶ 87-95.  Count II of the CAC further alleged that the

NFLP's decision, with the vote and approval of the individual NFL teams, to license these team marks for use in apparel solely to Defendant Reebok as part of an exclusive contract amounted to a vertical agreement in restraint of trade also in violation of the Cartwright Act. *Id.*, at ¶¶ 96-102.  Count III alleged violations of California's Unfair Competition Law based on the same factual allegations giving rise to the remaining counts of the CAC.  All of these claims were brought on behalf of a putative class of California indirect purchasers of NFL-team branded apparel during a defined Class Period, and sought monetary redress for the alleged overcharges imposed on the putative members of this indirect purchaser class.  *Id.*, at ¶ 78.  In addition to the foregoing counts for monetary relief brought under California's antitrust and unfair competition laws, Count IV of the CAC alleged a separate claim based on the federal Sherman Act for injunctive and declaratory relief only.  *Id.*, at ¶¶ 109-115.

At bottom, the lawsuit alleged that the Defendants' agreements had thwarted competition in the relevant market and thereby caused end-user purchasers in California to be overcharged for their NFL team-branded apparel.  The action sought monetary relief to compensate for this alleged overcharge (subject to the automatic trebling provision of the Cartwright Act), as well as injunctive, equitable, and declaratory relief.  By the time that this action was filed, a related but different federal antitrust action brought by American Needle, Inc., an alleged competitor to Reebok, had been filed and was being litigated in the United States District Court for the Northern District of Illinois.  *See New Orleans Louisiana Saints*, No. 04-C-7806 (N.D. Ill.).

The thirty-two named Defendants collectively sought to dismiss this action in its entirety, arguing that the CAC failed to allege a claim for relief.  *See* Dkt. No. 29 (Defendants' motion to dismiss CAC).  Plaintiff Dang (who later was replaced by current Plaintiff and Class Representative Michael Villa in a First Amended Complaint) opposed the motion, and the Court ultimately denied it, upholding the CAC in its entirety.  *See* Dkt. No. 38 (Court's Order denying motion to dismiss CAC).  That outcome, however, did not end the pleadings battle.  Defendants next filed a motion for partial judgment on the pleadings, arguing that all of Plaintiff's state-law claims (i.e., all claims for monetary relief) should be dismissed in light of the California Supreme Court's decision in *Partee v. San Diego Chargers Football Co.*, 34 Cal.3d 378 (1983).  *See* Dkt. No. 51 (Defendants' motion for partial

judgment on the pleadings). Plaintiff opposed this motion as well, and the Court denied it without prejudice. *See* Dkt. No. 79 (Order denying without prejudice Defendants' motion for partial judgment on the pleadings).

Following the close of the pleadings, the parties engaged in substantial discovery efforts. The entire record of the related *American Needle* litigation was produced in this action, including not only the hundreds of thousands of pages of documents, but also each of the transcripts of the depositions taken in *American Needle*. *See* Katriel Decl., at ¶ 2. Villa's counsel propounded further documents requests and interrogatories on all Defendants, and received additional responses and documents. Armed with this discovery, Villa's counsel moved for partial summary judgment or, in the alternative, summary adjudication. *See* Dkt. No. 83. The Court denied that motion without prejudice, however, ruling that the judicial bar on one-way intervention rendered it premature as no decision on class certification had yet been entered by the Court. *See* Dkt. No. 139 (Order denying without prejudice Plaintiff's motion for partial summary judgment).

On September 9, 2014, Plaintiff moved for class certification. *See* Dkt. No. 88. The motion was supported by, *inter alia*, the expert declaration of Plaintiff's economist, Russell W. Mangum III, Ph.D, as well as the expert report of Dr. Bruce Isaacson, Plaintiffs' marketing and survey expert. Defendants vigorously opposed the motion and introduced their own expert testimony, including the expert declaration of Defendants' economist, Lauren Stiroh, Ph.D., and a marketing expert, Dr. Randolph E. Bucklin. All experts were deposed by counsel in this case. *See* Katriel Decl., at 90-3 and 90-4. The motion for class certification was argued to the Court on April 9, 2015, and the Court took the matter under submission. *See* Dkt. No. 135.

While the briefing on Plaintiff's motion for class certification was pending and ongoing, the parties attended a full-day mediation session in New York before the Honorable A. Howard Matz (Ret.), former judge of the United States District Court for the Central District of California. *See* Katriel Decl., at ¶ 4. The mediation did not result in a settlement, either during the session or in further follow-up conferences with the mediator. *Id.* After the April 9, 2015 oral argument on Plaintiff's motion for class certification, counsel continued conferring about the possibility of settlement. Those

exchanges were protracted, conducted at arms' length, and eventually resulted in an agreement in principle that ultimately led to the Settlement Agreement. *Id.*, at ¶ 5. After a full hearing, the Court granted the Plaintiff's unopposed motion for preliminary approval of the Settlement on April 21, 2016 pursuant to which notice was disseminated to the absent class members (*see* Dahl Decl., at ¶¶ 7-20). This motion for Final Approval of the proposed settlement now follows.

**Summary Of Settlement Terms**

The Settlement Agreement defines and agrees to the certification of a Settlement Class defined as persons who, during the Class Period, made Eligible Purchases in California of caps, jerseys, or shoes bearing NFL- branded intellectual property (i.e., the NFL's or an NFL team's logo or trademark). *See* Settlement Agreement, at ¶¶ 2.2-2.3 (defining Settlement Class and its exclusions). The Court has already found, on a preliminary basis, that the Settlement Class satisfies the requirements of Rule 23(b)(3), and is worthy of certification. *See* Dkt. No. 155 [Preliminary Approval Order], at ¶¶ 2-5. No objection has been filed, nor has any other circumstance transpired, since that order that should disturb the Court's preliminary certification of the Settlement Class. To the contrary, the thousands of claims filed by the members of the Settlement Class, coupled with the lack of even a single objection or opt-out request, confirm the desire and interest of the absent class members to participate in the classwide mechanism and relief offered by the Settlement Agreement. The Declaration of Jeffrey Dahl ("Dahl Decl.") details the robust notice campaign in print and online that the Settlement Administrator implemented pursuant to the Court's Preliminary Approval Order. *See* Dahl Decl., at ¶¶ 7-20.

The $4,750,000 monetary relief offered by the settlement to this California Settlement Class is meaningful and undeniably reasonable. *See* Settlement Agreement, at ¶ 3.1. Under the Settlement Agreement, not only are eligible Settlement Class members provided with reimbursement to compensate for the alleged overcharge amount associated with their Eligible Purchases of NFL Apparel items, but the Settlement Agreement also provides that, if the Settlement Amount allocated to paying these claims is not exhausted after all eligible claims have been processed, then the remaining Settlement Amount will be used to increase the amount of reimbursement provided to each claimant until either the

reimbursement is trebled, the Class Payment Fund is exhausted or, the per claimant cap is reached.  *Id.*, at ¶¶ 4.1.6 and 5.1.  As a result, Authorized Claimants can receive settlement compensation that exceeds any claimed overcharge and could amount to a significant portion of the total purchase price paid for the NFL Apparel item.  The application of the Class Payment Fund towards the trebling of the individual class member's payment (as much as is possible given the remaining Class Payment Fund amount) is precisely the feature that other courts have noted marks an antitrust settlement with an indicia of fairness.  *See, e.g.*, *In re Pharmaceutical Industry Average Wholesale Price Litig.*, 588 F.3d 24, 35 (1st Cir. 2009) (district court's approval of *cy pres* distribution affirmed where court required that any undistributed funds first be used to treble settlement payments made to class members before any remaining funds were subject to *cy pres* disbursement: "The court ultimately insisted that the settlement pay class members treble damages before any money is distributed through *cy pres*."); *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423 (2nd Cir. 2007) (remanding for district court to consider on final approval of class action settlement whether undistributed funds should be used to treble class members claims first before being disbursed to *cy pres* recipient); *In re Publication Paper Antitrust Litig.*, 2009 WL 2351724, at *2 (D. Conn. Jul. 30, 2009) (not approving *cy pres* distribution of undistributed settlement funds until all class members' claims had been trebled).

Now that the claims filing period has expired and Dahl Administration, the Settlement Administrator appointed pursuant to the Court's Preliminary Approval Order, has concluded its tabulation of filed claims, the full breadth of the Settlement Agreement's monetary compensation is readily confirmed.  As detailed in the accompanying Declaration of Jeffrey D. Dahl ("Dahl Decl."), claims for a total of 77,236 Eligible Purchases of NFL Apparel items were timely filed by 43,561 Settlement Class members.  This mix was comprised of claims for: 10,043 cap purchases for which no proof of purchases was provided and another 51 cap purchases with a proof of purchase; 61,459 jersey purchases without a proof purchase and another 222 jersey purchases with a proof of purchase; as well as 5,447 shoe purchases without a proof of purchase and another 14 shoes for which the proof of purchase was supplied.  *See* Dahl Decl., at ¶ 24.  In addition, claims for another 739 apparel items by another 246 Settlement Class Members were filed but have thus far been flagged as deficient and subject

to correction with supplemental information.  *Id.*, at ¶ 25.  Further still, claims for yet another 3,433 NFL Apparel items were filed but denied as invalid.  *Id.*  All told, claims for 81,408 NFL Apparel items were filed within the claims filing period.  *Id.*  Unsurprisingly, the overwhelming majority of filed claims were not accompanied by a proof of purchase and, instead, were supported by the class member's sworn declaration of purchase.  What this claim filing data means is that Settlement Class members who filed claims for Eligible Purchases of jerseys or shoes and submitted a valid proof of purchase will receive approximately $67.13 in settlement reimbursement for those purchase transactions.  *See id.*, at ¶ 24.  Those Class Members who filed claims for purchases of these apparel items but did not submit a proof of purchase (the vast majority of claims), will receive approximately $33.56 in settlement reimbursement for each such eligible transaction.[1]  *Id.*  Class members who filed claims for Eligible Purchases of caps with a proof of purchase will receive approximately $22.38 in settlement reimbursement for these transactions, while those Class Members who filed claims for a cap purchase but did not submit a proof of purchase will receive approximately $11.19 in settlement reimbursement for these transactions.  *Id.*[2]

These amounts are unquestionably fair.  The Authorized Claimants are receiving by way of a settlement compromise an amount that could be equal to (or possibly even more than) what they could have obtained upon a successful outcome after a full adversarial trial and appeal. *See* Dkt. No. 127 [Expert Reply Rpt. of Dr. Russell Mangum III in Supp. Of Plaintiff's Mtn. For Class Cert.] (offering preliminary assessment of overcharge percentage alleged).

The monetary compensation afforded by the Settlement Agreement is unquestionably fair.  By

[1] For purposes of this calculation, it has been assumed that the amount of expenses, attorneys' fees, and incentive award requested by Class Counsel would be approved by the Court, thereby leaving $2,375,000.00 to be distributed to the Settlement Class members, consistent with what was contemplated in the Settlement Agreement.  *See* Dkt. No. 151-2, at § 12.1.  Any different fee or expense award order would correspondingly alter the amount of settlement compensation provided to the Settlement Class members.

[2] These individual settlement amounts are preliminary at this point and subject to slight variation as the claims are still being tabulated and the settlement class members who have submitted deficient claims will be afforded an opportunity to supplement their filed claim information.  The precise per claimant settlement amount disbursed will depend on, *inter alia*, the total number and makeup of valid claims tabulated with finality after a full audit of the filed claims has been completed.

any objective standard, the settlement warrants final approval.  Similar classwide settlements have been granted final approval by this and other California federal courts and affirmed by the Ninth Circuit, even where they provided a lesser proportional recovery than that provided here. *See In re Mego Financial Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (affirming final approval of class action settlement and finding that "the Settlement amount of almost $2 million was roughly one-sixth of the potential recovery, which, given the difficulties in proving the case, is fair and adequate."); *Shames v. Hertz Corp.*, 2012 WL 5392159, at * 6 (S.D. Cal. Nov. 5, 2012) (in antitrust action granting final approval to class settlement and noting that "district courts have found that settlements for substantially less than the plaintiffs' claimed damages may be fair and reasonable, especially when taking into account the uncertainties involved with litigation."); *McPhail v. First Command Financial Planning, Inc.*, 2009 WL 839841, at *5 (S.D.  Cal. Mar. 30, 2009) (granting final approval to class settlement and finding settlement to be fair and reasonable where "the recovery is only approximately 7% of the estimated damages."); *see also Lazy Oil Co. v. Wotco Co.,* 95 F.Supp.2d 290, 339 (W.D. Pa. 1997) (court approved settlement amounting to 5.35 percent of damages for the entire class period and 25.5 percent of the of the damages falling within the limitations period)  (court approved settlement of 28 percent of estimated damages for four years); *In re Domestic Air Transp. Antitrust Litig.,* 148 F.R.D. 297, 325 (N.D.Ga.1993) (approving a settlement in the appropriate amount of 12.7 to 15.3 percent of the estimated $2 billion minimum possible treble recovery); *Erie Forge and Steel, Inc. v. Cyprus Minerals Co.,* 1994 WL 485803 (W.D. Pa. Dec. 23, 1996) (approving settlement of $3.6 million where plaintiffs' expert estimated damages of $44.4 million); *Fox v. Integra Financial Corp.,* Civil Action No. 90-1504 (W.D. Pa. July 9, 1996) (approving a settlement of $6.5 million where plaintiffs' best estimate of provable damages was $33 million); *In re Four Seasons Sec. Litig.,* 58 F.R.D. 19, 36-37 (W.D.Okla.1972) ($8 million settlement approved although claims exceeded $100 million); *Cagan v. Anchor Sav. Bank FSB,* 1990 WL 73423 at *12-13 (E.D.N.Y. May 22, 1990) (approving $2.3 million settlement over objections that "best possible recovery would be approximately $121 million"); *Behrens v. Wometco Enterprises, Inc.,* 118 F.R.D. 534, 542 (S.D. Fla. 1988) ("The mere fact that the proposed settlement of $0.20 a share is a small fraction of the desired recovery of $3.50 a share

is not indicative of an inadequate compromise."), *aff'd* 899 F.2d 21 (11th Cir.1990).

The entire Settlement Amount created by the Settlement Agreement is non-reversionary, meaning that no portion of it will revert back to any of the Defendants. *See* Settlement Agreement, at § 5.1. As a result, to guard against the prospect that not enough claims may be received to exhaust the Settlement Amount, the Agreement provided for a contingent *cy pres* distribution that would be triggered only after all Court-awarded expenses and fees had been paid and all individual class member settlement disbursements had been trebled. *Id.*, at § 5.2. The enthusiastic response of the Settlement Class, however, has been such that the Settlement Fund will be completely exhausted, and Authorized Claimants will have their settlement reimbursement amounts increased towards a trebling of that settlement amount. Thus, if the Court grants Final Approval and grants Class Counsel's motion for attorneys' fees and expenses, the *cy pres* contingency will be mooted, and instead all settlement funds remaining after fees and expenses will be paid directly to the Settlement Class' Authorized Claimants. *See* Dahl Decl., at ¶ 26.

**The Lack Of Even A Single Objection Strongly Counsels In Favor Of The Settlement's Fairness.**

Not a single objection to the settlement has been filed. *See* Dahl Decl., at ¶ 22. The deadline for doing so was August 19, 2016. *See* Dkt. No. 155 [Preliminary Approval Order], at ¶ 18. This noteworthy absence of any dissent among the Settlement Class members is a strong indicator of the settlement's fairness, and counsels in favor of its Final Approval.[3] *See Roberti v. OSI Sys., Inc.,* 2015 WL 8329916, at *5 (C.D. Cal. Dec. 8, 2015) ("By any standard, the lack of objection favors final approval."). This is because when few class members object, a court may appropriately infer that the class action settlement is fair, adequate, and reasonable. *Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1178 (9th Cir. 1977). "It is established that the absence of a large number of Objections to a Proposed class action settlement raises a strong presumption that the terms of a Proposed class

---

[3] No objections were received either to the proposed settlement or to Class Counsel's separately filed motion for reimbursement of expenses, attorneys' fees, and incentive award.

settlement action are favorable to the class members." *National Rural Telecommunications Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 528-29 (C.D. Cal. 2004).

### The Lack Of Any Requests For Exclusion Confirms The Class' Endorsement Of The Settlement.

Coupled with the absence of even a single objection to the proposed settlement, not even a single presumptive Settlement Class member has sought to opt-out of the Settlement Class. *See* Dahl Decl., at ¶ 21. That the members of the Settlement Class unanimously elected to remain in the Settlement Class independently confirms the fairness of the settlement as viewed by the very individuals whom are affected by the terms of the Settlement Agreement. This lack of even a single opt-out request also counsels strongly in favor of granting Final Approval. *See HCL Partners Ltd. Partnership v. Leap Wireless Int'l, Inc.*, 2010 WL 4027632, at *3 (S.D. Cal. Oct. 14, 2010) ("Finally, in light of the extensive notice mailings to class members and the fact that no requests for exclusion or objections to the settlement have been filed, the reaction of the class members appears favorable.").

The Settlement Agreement is inherently fair as evidenced by its terms and the favorable reaction of the members of the Settlement Class—the very individuals whose interest is the focus of a district court's analysis in deciding whether to approve a classwide proposed settlement. Below, we also show that the Settlement Agreement readily satisfies the pertinent factors identified by the Ninth Circuit as guiding the analysis on a motion for Final Approval.

### ARGUMENT

### I.    FINAL APPROVAL SHOULD BE GRANTED.

#### A. Applying The Legal Standard To The Facts Of This Case And This Settlement Counsel In Favor Of Final Approval.

In scrutinizing a proposed settlement of a class action under Federal Rule of Civil Procedure 23(e), the Court must exercise its sound discretion to determine whether the proposed settlement is "fair, adequate and reasonable." *Officers for Justice v. Civil Service Commission,* 688 F.2d 615, 625 (9th Cir. 1982); *Marshall*, 550 F.2d at 1178; *see also In re Mego Financial Corp. Sec. Litig.*, 213 F.3d

at 458.  In determining whether to approve a settlement, the court's function is not to assess the case on its merits, but rather to determine that the settlement agreement is not the product of fraud, overreaching or collusion, and "taken as a whole, is fair, reasonable and adequate to all concerned."  *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 944 (9th Cir. 2015).

There is a long-standing policy favoring settlements of civil actions in the federal courts.  The Ninth Circuit has stated that "voluntary conciliation and settlement are the preferred means of dispute resolution." *Officers for Justice*, 688 F.2d at 625.  This pro-settlement policy is applicable "particularly where complex class action litigation is concerned." *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976) ("there is an overriding public interest in settling and quieting litigation," and this is "particularly true in class action suits.").

### B.    The Settlement Is Presumptively Fair.

A settlement enjoys a presumption that it is fair and reasonable where it is the product of arms' length negotiations conducted by capable well-experienced counsel after extended litigation. *M. Berenson Co. v. Faneuil Hall Marketplace, Inc.*, 671 F. Supp. 819, 822 (D. Mass. 1987); *Manual for Complex Litigation*, §30.42, at 240 (3d ed. 1995). *Accord Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979) ("[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness.").  Where, as here, the counsel recommending approval of the settlement are known to the Court as competent and experienced, significant weight may be given to their opinion.  *Kirkorian v. Borelli*, 695 F. Supp. 446, 451 (N.D. Cal. 1988). This Settlement is presumptively fair.  It was the product of intensive and protracted negotiations between counsel highly experienced in this area of law, was achieved after an unsuccessful full-day mediation session before the Hon. A. Howard Matz, a well-respected mediator and retired judge of the United States District Court for the Central District of California, and was reached only after all parties were well-aware of the strengths and weaknesses of their case.

Here, the Court must consider whether the settlement as a whole is reasonable; it stands or falls in its entirety.  *Hanlon v. Chrysler Corp.*, 150 F.3d 1101, 1026 (9th Cir. 1998); *Class Plaintiffs*,

955 F.2d at 1276; *Officers for Justice*, 688 F.2d at 628.  "[T]he settlement or fairness hearing is not to be turned into a trial or rehearsal for trial on the merits."  *Id.* at 625.  In determining the fairness of a proposed settlement, the court is guided by factors which were summarized by the Ninth Circuit in *Hanlon*, 150 F.3d at 1026:

> Assessing a settlement proposal requires the district court to balance a number of factors:  the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

"The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case."  *Officers for Justice*, 688 F.2d at 625.

### C.  This Settlement Satisfies The *Hanlon* Approval Standards.

#### 1.  Arms' Length Negotiations.

There is an initial presumption that a proposed settlement is fair and reasonable when it is the result of arms' length negotiations.  *See* 4 H. Newberg & A. Conte, Newberg on Class Actions §11.41 at 90 (4th ed. 2002) ("Newberg").  Indeed, the non-collusive nature of the negotiations and the stature of counsel have often been recognized as paramount factors in the final approval of class action settlements.  *See Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981) ("the fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight").

Here, the settlement was the result of extensive, protracted, arms' length and hard-fought negotiations between experienced class action lawyers—Class Counsel and counsel for the NFL Defendants and Reebok—thoroughly familiar with both antitrust and class action litigation, and fully versed in the issues presented by this action.  Significant effort was expended to bring about a classwide settlement of the Settlement Class members' claims.  Mediation of these claims involved a full in-person mediation session before the Honorable A. Howard Matz (Ret.) in New York that did not

1   result in a settlement.  *See* Katriel Decl., at ¶ 4.  Instead, the parties continued briefing and argued their

2   class certification positions after the mediation failed to achieve a settlement.  Only through extensive

3   telephonic conferences among counsel after the mediation, and after the class certification motion was

4   argued, was the Settlement Agreement ultimately reached.  *Id*.

5

6   **2.      The Settlement Is Outstanding In Light of the Risks of Continuing
         Litigation.**

7          In assessing the fairness, reasonableness and adequacy of the proposed settlement, the Court

8   must balance the benefits afforded to members of the Class and the immediacy and certainty of a

9   substantial recovery for them against the continuing risks of litigation.  Generally, the principal risks to

10  be assessed are the difficulties and complexities of proving liability and damages.  *See, e.g.*, *In re Mego*,

11  213 F.3d at 458-59 (assessing risk of inability to prove fraudulent scheme in affirming settlement);

12  *Linney v. Cellular Alaska Partnership*, 151 F.3d 1234, 1240-41 (9th Cir. 1998) (assessing risks

13  involving fraudulent concealment and ability to obtain damages in affirming settlement); *Torrisi*, 8 F.3d

14  at 1376 (approving settlement based in part on "inherent risks of litigation"); *Class Plaintiffs*, 955 F.2d

15  at 1292 (approving settlement based on uncertainty of claims and avoidance of summary judgment).

16         After weighing the strengths and weaknesses of their case, Class Counsel concluded that the

17  proposed Settlement represents an outstanding result for the Settlement Class.  By the time the

18  settlement was negotiated, Defendants had already shown their willingness to zealously defend their

19  position, including the NFL Defendants' petitioning and arguing their case all the way to the United

20  States Supreme Court and Defendants' continued defense of the matter following remand in the related

21  *American Needle* competitor antitrust suit.  *See American Needle, Inc. v. National Football League*, 560

22  U.S. 183 (2010); (litigating related antitrust lawsuit before the United States Supreme Court); *American

23  Needle, Inc. v. New Orleans Louisiana Saints*, 2012 WL 4327395 (N.D. Ill. Aug. 17, 2012)

24  (Defendants' continued litigation of related antitrust lawsuit before district court after remand from

25  United States Supreme Court).  Although this case managed to progress well past the pleadings stage,

26  there was a continuing risk that a class would not be certified, summary judgment would be granted,

27

28

---

*Villa v. San Francisco Forty Niners, Ltd.*,          13          PLTF'S UNOPPOSED MOTION FOR FINAL
Case No.  5:12-cv-5481-EJD                                          APPROVAL OF CLASS SETTLEMENT

1  trial would result in a defense judgment, or any appeal that the NFL Defendants or Reebok had made

2  clear they would pursue even if the Class prevailed would lead to an unfavorable result, including no

3  recovery whatsoever for the Class.

4  Aside from the risks on the merits, there was also a consideration of the delay that would have

5  been engendered by litigating this case through trial and a possible appeal.  Even if the Class succeeded

6  in prevailing on all outstanding claims and in upholding that result on appeal, the time required for all

7  these events to occur would be detrimental to the best interests of the Class.  A trial date had not yet

8  been set, and an appeal before the Ninth Circuit commonly takes two years or more to resolve.  Further

9  litigation before the Supreme Court (as transpired in *American Needle*) would result in further delay

10  before the litigation would be resolved with finality. *See Officers for Justice*, 688 F.2d at 625

11  (approving settlement based in part on the possibility that a judgment after a trial, when discounted,

12  might not reward class members for their patience and the likely delay reflected in the "track record"

13  for large class actions).

14  The Settlement Class Members' purchases of NFL Apparel are all already at least 6 years old.

15  Any further delay occasioned by continued adversarial litigation would risk that any evidence or even

16  recollection of Class Members' Eligible Purchases would be lost or impaired by the time an adversarial

17  judgment would be rendered.  There is a real interest among the Settlement Class members to have their

18  claims compensated now before their recollection or proof of the facts giving rise to their claims go

19  stale.

20

21  **3.      The Risk Of Obtaining And Maintaining Class Action Status Throughout The Trial Militates In Favor Of Final Approval.**

22  The risk of obtaining and maintaining class action status throughout the trial is also a factor that

23  militates in favor of Final Approval.  By the time the settlement discussions that eventually resulted in

24  the Settlement Agreement were held, the parties had fully briefed and orally argued Plaintiffs' motion

25  for class certification.  *See* Dkt. Nos. 88, 117, 127, and 135 (class certification briefing and hearing).

26  The motion was taken under submission by the Court. *See* Dkt. No. 135.

27

28

Although Class Counsel believed in the merits of their class certification position, there was and is no guarantee that class certification would have been granted.  The briefing and oral argument on the motion were contentious.  A total of four expert economists and marketing or survey experts submitted expert reports and were deposed in connection with just the class certification motion and briefing.  *See* Katriel Decl., at ¶ 6.  Moreover, even if Plaintiff secured class certification, that decision would be subject to potential interlocutory review by way of a petition filed pursuant to Federal Rule of Civil Procedure 23(f).  Given the prior track record of Defendants in zealously defending against these claims on all fronts, the prospect and outcome of such appellate review was far from certain.  The uncertainty and risk inherent in obtaining and maintaining class certification, therefore, also militates in favor of approval of a classwide compromise that settles with finality the class certification dispute.

### 4.      The Amount Offered In Settlement Supports Final Approval.

Unlike class action settlements that offer claimants a mere token recovery amounting to pennies on the dollar, the amounts offered to eligible Settlement Class members by this proposed Settlement are real and significant.  This, as set forth at pages 4-5 *supra*, is largely as a result of the Settlement Agreement's provision that the amount of compensation provided to class members under the Settlement Agreement will be increased until trebled (or until the fund is exhausted).  Accordingly, the net result is that eligible Settlement Class members are poised to obtain compensation in excess of their alleged (but as yet unproven) overcharges.  This use of the settlement amount balance towards the trebling any initial settlement amount disbursed to a class member is precisely the feature that courts have found imbues an antitrust class settlement with an indicia of fairness.  *See, e.g.*, *In re Pharmaceutical Industry Average Wholesale Price Litig.*, 588 F.3d at 35 (district court's approval of *cy pres* distribution affirmed where court required that any undistributed funds first be used to treble settlement payments made to class members before any remaining funds were subject to *cy pres* disbursement: "The court ultimately insisted that the settlement pay class members treble damages before any money is distributed through *cy pres*."); *Masters*, 473 F.3d 423 (remanding for district court to consider on final approval of class action settlement whether undistributed funds should be used to

treble class members claims first before being disbursed to *cy pres* recipient); *In re Publication Paper Antitrust Litig.*, 2009 WL 2351724, at *2 (D. Conn. Jul. 30, 2009) (not approving *cy pres* distribution of undistributed settlement funds until all class members' claims had been trebled).

The amount offered as part of this Settlement Agreement, therefore, also strongly favors final approval.

### 5. The Discovery Completed And Stage Of The Proceedings Support Final Approval.

This settlement was not entered into blindly by Class Counsel.  Instead, by the time settlement discussions were conducted, Class Counsel had received hundreds of thousands of pages of written discovery from the more than thirty named defendants.  *See* Katriel Decl., at ¶ 2.  All transcripts of depositions taken in the *American Needle* action were produced to, and reviewed by, Class Counsel.  *Id.* Both of the experts relied upon by Defendants for their class certification opposition produced their expert reports and were deposed by Class Counsel.  *Id.*

Likewise, by the time the settlement was negotiated, the parties had already fully briefed and argued Plaintiff's class certification motion.  *Id.*, at ¶¶ 4-6.  The litigation had already seen three rounds of dispositive motions briefed, argued, and decided.  These were: Defendants' motion to dismiss the complaint (denied in its entirety); Defendants' motion for partial judgment on the pleadings (denied without prejudice); and, Plaintiff's motion for partial summary judgment as to liability or, in the alternative, summary adjudication (denied without prejudice).  Thus, by the time that settlement discussions ensued in earnest, all parties had a meaningful basis upon which to assess the strengths, weaknesses, and risks inherent in continued litigation.  *See In re Google Referrer Header Privacy Litig.*, 87 F. Supp.3d 1122, 1134 (N.D. Cal. 2015) (Davila, J.,) (finding stage of the proceedings supported final approval of classwide settlement where prior to settlement parties had "fully briefed three motions to dismiss").

Further attesting to the informed nature of the settlement decision-making is the fact that an initial mediation held before the Honorable A. Howard Matz (Ret.) did not result in a settlement.  *See*

Katriel Decl., at ¶ 4. That a settlement did not materialize even after a day-long mediation session, but required protracted follow-up consultation both with the mediator and separately among counsel underscores the reasonable relationship between the settlement and the facts discovered. *Id.* This was not a hastily drawn settlement agreement.

The state of discovery and stage of the proceedings, therefore, also supports Final Approval.

### 6.   The Experience And Views Of Counsel.

This action was prosecuted by two law firms specializing and with significant experience in class action litigation. *See* Dkt. Nos. 151-3 and 151-4 (firm resumes of Class Counsel law firms).  It was and remains the judgment of Class Counsel that settlement on the terms set forth in the Settlement Agreement was and is in the best interests of the Class. *See* Katriel Decl., at ¶ 7.  "Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Rodriguez v. West Publishing*, 563 F.3d 948, 967 (9th Cir. 2009).

The view of experienced Class Counsel, as echoed by the prior involvement of an experienced mediator, also counsel in favor of Final Approval.

### 7.   The Reaction Of The Class Members To The Proposed Settlement Also Supports Final Approval.

Beyond mere theoretical or academic arguments that one could raise in support of the proposed Settlement, the practical reality is that the Settlement Class members have enthusiastically endorsed it.  As made clear in the Dahl Declaration, not a single objection to the proposed settlement has been filed.  *See* Dahl Decl., at ¶ 22.  As this Court has explained earlier this year, "[l]ack of objection from the class members is a substantial factor in favor of final approval." *Vasquez v USM Inc.*, 2016 WL 612906, at *3 (N.D. Cal. Feb. 16, 2016); *see also Roberti*, 2015 WL 8329916, at *5 (C.D. Cal. Dec. 8, 2015) ("By any standard, the lack of objection favors final approval.").

The lack of any objection points to the Class members' endorsement of the settlement's fairness. That endorsement is merely highlighted by the fact that not only were there no objections filed, but no class member has sought to exclude himself from the Settlement Class. *See* Dahl Decl., at ¶ 21; Dkt. No. 161 (Declaration of Nancy Baker reporting no opt-out requests received); *HCL Partners Ltd. Partnership*, 2010 WL 4027632, at *3 (S.D. Cal. Oct. 14, 2010) ("Finally, in light of the extensive notice mailings to class members and the fact that no requests for exclusion or objections to the settlement have been filed, the reaction of the class members appears favorable.").

The reaction of the members of the Settlement Class, whose interest is to be safeguarded as part of this motion for final approval, unquestionably militates in favor of approval of the settlement.

Because the Settlement Agreement is fair, reasonable, and readily satisfies the *Hanlon* approval factors, the Unopposed Motion for Final Approval should be granted.

## II.    THE SETTLEMENT TRUST AND TRUSTEE SHOULD BE APPROVED.

Section 10.1 of the Settlement Agreement provides that as part of the Final Approval motion, the parties will seek Court approval for the creation of a Settlement Trust and appointment of a Settlement Trustee. *See* Settlement Agreement, at § 10.1. The Settlement Trust, administered by the Settlement Trustee, will be the repository of the Settlement Amount (minus the Notice Costs Payment which has already been paid by Defendants) from the date specified in the Settlement Agreement until disbursement of the funds to the Settlement Class members. *Id.*, at §§ 10.4.-10.5. A form Escrow Agreement creating the Settlement Trust is attached as Exhibit 1 to the Katriel Declaration, and the parties hereby seek the Court's approval to execute an agreement substantially in that form in order to create the Settlement Trust. Following consultation with the Claims Administrator, the parties have agreed to the appointment of Huntington Bank, a duly insured and federally chartered financial institution, to act as Trustee of the Settlement Trust. *See* Katriel Decl., at ¶ 8. Pursuant to Section 10.2

of the Settlement Agreement, the parties jointly seek the Court's approval of the appointment of

Huntington Bank as the Settlement Trustee.[4] *See* Settlement Agreement, at § 10.2.

## **CONCLUSION**

For all the foregoing reasons, Plaintiff's Unopposed Motion For Final Approval Of The Class

Action Settlement Should be GRANTED.

Dated: October 18, 2016                          Respectfully submitted,


                                                 /s/ Roy A. Katriel
                                                 Roy A. Katriel (SBN 265463)
                                                 THE KATRIEL LAW FIRM, P.C.
                                                 4225 Executive Square, Suite 600
                                                 La Jolla, CA 92037
                                                 Telephone: (858) 242-5642
                                                 Facsimile: (858) 430-3719
                                                 e-mail: rak@katriellaw.com

                                                 Ralph B. Kalfayan (SBN 133464)
                                                 KRAUSE, KALFAYAN, BENINK
                                                 & SLAVENS, LLP.
                                                 550 West C Street, Suite 530
                                                 San Diego, CA 92101
                                                 Telephone: (619) 232-0331
                                                 Facsimile: (619) 232-4019
                                                 e-mail: rkalfayan@kkbs-law.com

                                                 *Class Counsel*

---

[4] Pursuant to Section 10.2 of the Settlement Agreement, once appointed, the Settlement Trustee may be replaced by the Court's approval of a joint motion made by the parties.